FINANCE CO. OF PENNSYLVANIA *et al. v.* CHARLESTON, C. & C. R. Co.

*Ex parte* MOORE.

*(Circuit Court, D. South Carolina.* March 11, 1892.)

1. RAILROAD COMPANIES—FORECLOSURE OF MORTGAGE—RECEIVERS—PRIORITIES OF LIENS.

The order which a court of equity, on appointing a railroad receiver, makes for the payment of wages due employes for a reasonable period prior to the receivership, is merely a personal protection, given *ex gratia* to those who depend upon their daily labor for support, and will not cover a claim by a merchant for rations furnished to such laborers, under contract with the company, and for which the company alone is liable, although the company charges the rations to its laborers as part of their wages.

2. SAME.

The claim is entitled to payment before the payment of interest on the mortgage bonds, and if any sums applicable thereto have been paid out for such interest, or for permanent improvements whereby the bondholders have been benefited, the claim will be a charge, to the amount of the moneys so diverted, upon any earnings in the hands of the receiver, or, failing these, upon the proceeds of the sale of the road. 48 Fed. Rep. 188, followed.

In Equity. Suit by the Finance Company of Pennsylvania and others against the Charleston, Cincinnati & Chicago Railroad Company to foreclose a mortgage. Heard on the petition of G. M. Moore, claiming priority of payment for supplies furnished to laborers. For other phases of the litigation, see 45 Fed. Rep. 436, and 48 Fed. Rep. 45, 188.

*Mitchell & Smith* and *B. A. Hagood,* for petitioner.

*A. T. Smythe,* opposed.

SIMONTON, District Judge. The petitioner is a merchant at Blacksburg, a town on the line of the Charleston, Cincinnati & Chicago Railroad. In 1890 he entered into a contract with the defendant company to furnish rations to hands employed by it. The company charged these rations to the hands as part of their wages. The items were all charged to the railroad company. The accounts were regularly made out against and presented to the company, audited, and passed. Upon bill filed by the mortgage bondholders, a temporary receiver was appointed on 10th December, 1890. On 26th February, 1891, the permanent receiver was appointed. In the order appointing the permanent receiver is this provision: "That the receiver pay all wages due to the employes at the date of the order appointing a temporary receiver herein for labor or services, within ninety days before the same." The petitioner presents

and proves an itemized account wherein it appears that, within the 90 days before December 10, 1890, he had furnished to the company, under his contract, $321.72; and that prior to that date, from May 14, 1890, he had furnished the rest of the items on his account. The whole account, including both periods, foots up $902.80. He claims that, inasmuch as he furnished rations which were used in part payment of wages to employes, he comes within the equity of this order of 28th February, and that as to the rest of his account he comes within the equity established in *Fosdick* v. *Schall*, 99 U. S. 235. As I understand the current of cases which began with *Fosdick* v. *Schall*, the rule is this: When holders of railroad bonds, secured by mortgage, come into a court of equity, and ask not only the foreclosure of the mortgage, but also the appointment of a receiver, into whose hands the corporation shall be compelled to deliver all its property, the court, as a condition precedent to granting this last request, can impose terms in reference to the payment from the income during the receivership of such outstanding claims as address themselves peculiarly to the protection of the court. Ordinarily a mortgagor is entitled to the possession of his property until the execution of a decree for foreclosure. When the mortgagor is a railroad company, the employer of many persons on weekly wages, both the employer and employed can enter into engagements relying upon this normal condition. If, therefore, the court, at the instance of mortgage creditors, interrupts the possession of the railroad company, and suddenly removes the employer from control of current earnings, it may well see to it that the employed are not put at a disadvantage, or be made to suffer from this unexpected change. Without considering liens or equities, acting only in its discretion, it imposes upon the suitors, as the condition of granting their request, that such employes be paid, not only accruing wages, but such as have accrued within a reasonable period. This is not a right vested in the employes, or an equity administered in their favor. It is a personal protection given to them by the court *ex gratia*, moved thereto by the fact that this class depend upon their daily labor for their daily food. Afterwards when the court has assumed the administration of the property, and it appearing that there are certain outstanding claims in the hands of persons who furnished equipment materials, supplies, or anything which was necessary to keep the railroad a going concern, then the court administers an equity, and the benefits of this equity inure as well to the original parties keeping up the road as to their assignees. *Trust Co.* v. *Walker*, 107 U. S. 596, 2 Sup. Ct. Rep. 299. In the present case, when the complainants made their application for a receiver, the court took into consideration what conditions should be imposed on the grant of their prayer. These conditions were payment of wages due to the employes within 90 days before 10th December, 1890. There are no wages due. The petitioner did not pay them any wages; did not deal with nor credit them. He furnished the company with goods, charged them to the company, and looked to the company only. There is nothing like subrogation here; and, as the employes themselves are paid, not as a matter of right, but as a matter of grace, nothing to be subrogated

to. Dealing with the interest of mortgagees in railroad property, we encounter vested rights. They cannot be displaced upon any mere idea of right, or on any refined notions of equity. In managing the property, the court is not the owner, nor can it entertain sentiments of benevolence or humanity in disbursing the funds,—luxuries in which the owner alone can indulge. So much of the petition as prays special priority under the order of 28th February, 1891, is disallowed. The claim comes under the principles laid down in *Fosdick* v. *Schall*. We have already passed upon several claims of this character in the intervention of the *Pocahontas Coal Co. et al.* in the main cause, (48 Fed. Rep. 188.) Let the claim of the present petitioner be included with those claims to the amount proved, $902.80, and share the same fate.