NATIONAL BANK OF AUGUSTA et al. v. CAROLINA, K. & W. R. CO.
(HUMBERT, Intervener).

(Circuit Court, D. South Carolina. September 3, 1894.)

RAILROADS—INSOLVENCY—ALLOWANCE OF PRESIDENT'S SALARY.
  Where a railroad goes into the hands of a receiver without funds, and the earnings under the receiver are barely enough to pay current operating expenses, arrears of salary of the president will not be paid in preference to the mortgage debt out of the proceeds of the road, the mortgage giving the debt secured a first lien.

Action by the National Bank of Augusta, Ga., and others, against the Carolina, Knoxville & Western Railroad Company. Joseph B. Humbert intervenes, and asks for the allowance of a claim. Claim disallowed.

Cothran, Wells, Ansel & Cothran, for petitioner.
Joseph Ganahl, for respondent.

SIMONTON, Circuit Judge.    This is an intervention of Joseph B. Humbert, Esq., late the president of the defendant company, seeking payment of arrears of salary due to him as president. The petition, confirmed by the testimony, shows long and valuable service by Mr. Humbert, prompted chiefly by a desire to promote a public enterprise for the public good. There can be no doubt that good service was rendered, and that the amount claimed is justly due; but as the railroad company went into the hands of the receiver utterly insolvent, possessing no funds whatever, and as the receiver has barely paid current operating expenses, the earnings being insufficient to pay him any compensation, the question we are to meet is, shall these arrears of salary of the president be paid out of the proceeds of sale prior to and in preference over the mortgage debt? By the terms of the mortgage, the bonds secured by which were floated during Mr. Humbert's presidency and under his action, a first lien before all other liens is secured to these bonds. This is the contract between the parties, and all courts are bound by its terms. In Fosdick v. Schall, 99 U. S. 235, the supreme court of the United States recognized the equity of a certain class of claims controlling the conscience of the mortgage creditor seeking the aid of a court of equity, and to this class priority was given over the mortgage debt. The theory of this equity is this: It is the interest as well of the public as of all parties interested in a railroad that it be kept a going concern. To do this, there must be a ready

supply of labor and materials necessary to this end. If persons who give labor and materials were required in every instance to make careful examination into the condition of the company, so as to ascertain its solvent capacity for paying debts, all of its operations might be brought to a standstill. For this reason, persons dealing with a company are encouraged to do so, with the knowledge that the court will see that all such supplies of labor and material given, and not paid for within a reasonable period before the appointment of a receiver, will be provided for by the court. This period never is beyond six months. But, in exercising this equity, the court goes upon dangerous ground, and therefore proceeds cautiously, keeping rigidly within prescribed limits. No case can yet be found which extends the equity to the president of the insolvent company. He knows exactly its condition. He has full notice of the liens existing. He is not bound to furnish his services a day after his remuneration seems uncertain. He cannot be included among that class of employés who have no means of ascertaining whether a short credit to the company is safe or not. Fosdick v. Schall goes upon the idea that services for labor and material should be first paid, and, if anything else be paid from which the mortgagees derive any substantial benefit, this is a diversion which they must supply. But, were there any diversion of this kind in this case, it was made by and under the direction of the president himself, and now he cannot complain. In the absence of all authority for its allowance, the claim must be disallowed; and it is so ordered.