PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO.

(Circuit Court, S. D. New York. September 30, October 1, and October 8, 1907.)

1. RECEIVERS—RECEIVERS FOR STREET RAILROAD—DUTIES.

Receivers appointed for street railroad property, pending an investigation by a state commission in respect to improvements to be made on the property and its methods of operation, have no occasion to appear and participate in such investigation, that being the province of the owners or others interested in the property.

**2. EQUITY—SUIT FOR RECEIVERSHIP—INTERVENTION.**

Where receivers have been appointed for a system of street railroads, consisting of a combination of various lines, in a suit against the lessee, from which fact it is to be apprehended that rentals will not be paid promptly and that a lessor will also be placed in a position of at least temporary insolvency, it is proper that such lessor should be permitted to intervene as a party defendant and surrender its own property and interest to the receivership.

**3. CREDITORS' SUIT—FEDERAL COURTS—CONDITIONS PRECEDENT.**

In a creditors' suit in a federal court against an insolvent street railroad company for a receivership and the winding up of its affairs, the objection that complainants have not reduced their claims to judgment can be raised only by the defendant and may be waived.

**4. COURTS—JURISDICTION OF FEDERAL COURTS—COLLUSIVE SUITS.**

Where a suit in a federal court is between citizens of different states, and presents a bona fide cause of action involving the statutory amount, there is no collusion in a legal sense which will defeat the jurisdiction of the court because the parties agreed that the suit should be brought therein, and that the averments of the bill should be admitted by the answer.

[Ed. Note.—Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

**5. SAME—GROUND FOR REFUSAL TO ENTERTAIN JURISDICTION.**

Where a suit brought in a federal court is properly cognizable therein, the court cannot refuse to entertain jurisdiction because the controversy might have been more expeditiously or economically determined in a state court.

**6. STREET RAILROADS—RECEIVERS—RECEIVERS FOR STREET RAILROADS—ADMINISTRATION OF PROPERTY.**

Directions announced for the government of receivers for a street railway system in relation to the payment of expenses for maintenance and operation, rentals, and other fixed charges upon the property, and the liquidation or proof of claims for torts against the defendant companies.

In Equity. On application by receivers for instructions.

Arthur H. Masten, for receivers.

LACOMBE, Circuit Judge. Application is made by receivers for instructions of the court as to whether they should appear and participate in the investigation now being conducted by the Public Service Commission touching improvements to be made on the property and in the methods of its operation. It would seem unnecessary for them to do so. Their occupancy of the leased property is but temporary; presumably it will not extend—at least for operation—beyond a year, and it is to be hoped that it may be ended sooner. They are not practical street railroad men, have had only a few days' experience with this property, and could contribute nothing to the solution of the problem before the Commission. The former operators and owners of the roads are the persons from whom information as to existing conditions and the probable results of proposed changes is to be obtained. All books in the custody of the receivers and all persons in their employ, who may be called as witnesses, will of course be at the service of the Commission, and it is to be supposed that the owners will continue to be represented at the hearing and to conduct their side of the investigation because, to whatever extent the income from the prop-

erty may enable the receivers to carry out the improvements called for by the Commission, the ultimate burden of them all will fall upon the property.

On application of Metropolitan Street Railway Company to be made party defendant.

J. Parker Kirlin, for petitioner.
James Byrne, for complainants.
James L. Quackenbush, for defendant.

LACOMBE, Circuit Judge. The receivers are now in possession of the earning property of petitioner, and under the terms of the lease petitioner can avail of no default in payment of amounts stipulated within a year from such default. The property is an intricate combination of various roads, one or more of which might be cut out of the system by failure to pay the interest on some underlying mortgage, or some rental due the constituent road. It is of vital interest to petitioner that the property be kept intact. Under these circumstances there can be no doubt that a proper case for intervention is made out. The only question is whether petitioner should be brought in as a party plaintiff or a party defendant. The petition shows that by reason of the fact that all its earning property is held by receivers, who, it is apprehended, will not pay certain sums, which the lessee stipulated to pay to the lessor, the latter is without means to meet its obligations, being deprived of its income and unable, while its property is held by receivers for an indefinite period, to borrow on such property. Whatever may be the actual value of the property of petitioner, it appears to be in a condition of temporary insolvency, and should come in as a party defendant turning all its property over to receivers to be marshaled and its obligations paid. Central Trust Co. v. Wabash, etc., R. Co. (C..C.) 29 Fed. 618. Such a disposition of the matter seems to be greatly to the public interest. It is hardly to be supposed that any substantial sum could be borrowed on receivers' certificates bottomed only on a lessee's interest in a leasehold, which might be terminated in a year for failure to pay all that was stipulated. On the other hand, when receivers are in control of all the interests of both lessor and lessee, it may reasonably be expected (unless, indeed, the very growth of the system has reduced its value to a greater extent than is generally supposed) that they will be able, should occasion arise, to obtain the money necessary to pay for such replacements and improvements as may be required to secure efficient service.

The interests of lessor and lessee are different and, in a sense, diverse. Nevertheless, it seems practical to adjust all questions in a single receivership. In this circuit it is not the practice for receivers to concern themselves with plans for reorganization. Fowler v. Jarvis Conklin (C. C.) 63 Fed. 888. Their sole functions are to hold the property intact, operating it as efficiently for the public service as their resources will permit, to ascertain the liabilities, to marshal the assets, and eventually, unless in the meantime some entirely solvent concern able to liquidate all obligations and succeeding to owner's and lessee's interests

shall appear to take it off their hands, to sell it to the best advantage, and apply the proceeds ratably to the payment of the liabilities. It is thought that the present receivers can do this as holders of the interests of both lessor and lessee. Should future experience seem to indicate that a separate trustee for one of the parties is required, some way to meet that difficulty will be found.

With assent of the sureties proper extension of the receivers' bonds should be had so as to cover the new situation.

On application to make receivers permanent.

James Byrne, for the motion. J. Parker Kirlin, for petitioner Metropolitan St. Ry. Co. Paul D. Cravath and Henry A. Robinson, for defendant New York City Ry. Co. Roger Foster, for Reisenberg & Gallagher, opposed. Henry Wollman, for Solomon Kohn, opposed. Hawes & Katchings, for tort creditors, opposed.

LACOMBE, Circuit Judge. On September 24, 1907, a decree was entered on bill and answer appointing temporary receivers of the property of defendant, and October 7th was assigned as the date on which hearing should be had on the question whether the receivers should be continued with the usual powers exercised in such cases for operating and preserving the property, ascertaining the liabilities, marshaling the assets, and distributing the proceeds. It was announced that at such hearing not only the parties, but also any person in anywise interested, should be heard. Upon the hearing the court listened to argument from Mr. Byrnes, counsel for complainants, and Mr. Kirlin, for the Metropolitan Street Railway Company, from Mr. Foster, counsel for creditors in tort actions against the New York City Railway Company and against the Metropolitan, one of the former having obtained judgment before appointment of receivers, and from Mr. Hawes, representing tort creditors of the New York City Railway Company. The last two gentlemen appeared with petitions, the acceptance or consideration of which the court reserved till October 14th.

The suit at bar was brought by two general creditors of the New York City Railway Company to recover several thousand dollars for materials, and for work, labor, and services. Both complainants are residents of New Jersey, and defendant is a resident of New York. The bill, in the form usual in these cases, sets forth their claims, and asserts that the defendant is insolvent and unable to pay its present obligations, and is overwhelmed with heavy liabilities soon falling due, while its property consists of a leasehold of a system of street railroads composed of many component roads to whom or to whose bond holders payments are coming due, default in the payment of which may interfere with the operation of the system. Answer was put in promptly after the filing of the bill, admitting all its allegations, and uniting in the application for appointment of receivers. Upon the facts thus presented to the court the complainants were entitled, under a multitude of precedents too well known to cite, to the appointment of receivers to marshal the property, ascertain the liabilities, and distribute what assets there might be among all entitled to them according to the rules and principles of equity. The complainants, it is true, did not have judgments for their respective claims with execution returned unsatisfied, but since Hollins v. Brierfield Coal Co., 150 U. S. 371, 14

Sup. Ct. 127, 37 L. Ed. 1113, it has always been understood by federal judges that in the opinion of the Supreme Court such prerequisites were solely for the benefit of the defendant, and when waived by him became nonessential. It is now suggested that there was "collusion" in the proceedings resulting in decree appointing temporary receivers, and reference is made to section 5 of the judiciary act of 1875, which provides that if it shall appear to the satisfaction of the Circuit Court that a suit "does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit," etc.

A controversy is certainly set forth in the complaint, and it seems to be an entirely novel proposition that it ceases to exist as a justifiable controversy as soon as defendant admits the allegations of the complaint. If that were so courts would be powerless to enter judgments for undisputed claims since they sit only to dispose of controversies. This court disposed of that question in Park v. N. Y., L. E. & W. R. R. (C. C.) 70 Fed. 641. There is no collusion apparent in any legal sense. It is of course manifest that complainants and defendant were entirely in accord, and arranged together that the suit should be brought to the federal court, and that the averments of the bill should be admitted by the answer. But there was no colorable assignment of some claim to a citizen of another state, nor any misrepresentation or distortion of facts to mislead the court. On the contrary, examination of the books shows that the financial situation is precisely such as was averred in the complaint.

We have then a controversy between citizens of different states and of the statutory amount presented to a federal court of competent jurisdiction. Parties to such a controversy would seem to be entitled as of right to have such court take jurisdiction of it. It surely cannot be that the court can escape the burden of disposing of the questions it may present, however numerous or difficult they may be, merely by finding that both parties elected to seek that tribunal, and then calling such joint election "collusion" under the act of 1875. Expression of judicial opinion in harmony with these statements will be found in Brassey v. N. Y. & N. E. R. R. (C. C.) 19 Fed. 663; Dickerman v. Northern Trust Co., 176 U. S. 191, 20 Sup. Ct. 311, 44 L. Ed. 423; and Blair v. City of Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801. It was suggested by counsel that these are state corporations, that their properties are located in the state to be operated under state laws, that the mortgages on them were made in the state, that the state has statutes and courts and machinery for conducting any receivership which may be required, that the administrative detail of conducting such a receivership will be enormous, and proper attention to it most irksome and laborious; that in the state the work of supervision can be divided among 17 judges, while here there is but one to attend to it. All these may be very good reasons why the parties might have taken their controversy and all that its determination entails into the state courts; but they will not justify any court in barring its doors

to a litigant who comes with a controversy which the Constitution and the laws give him the right to bring before that court.

As to the Metropolitan Street Railway Company, the reasons for allowing it to intervene as a party defendant and for extending receivership over its property were sufficiently set forth in the memorandum filed on October 1st. Having taken its entire property into possession of the court under conditions which left it powerless to recover the same for a year, the receivership left it wholly without means to meet its obligations, and it seems to be clearly the duty of the court which has thus deprived it of its resources to protect it against execution while receivers handle and distribute those resources. Having possession of the res, the court acquires jurisdiction of its owner.

A decree will therefore be entered in the usual form, directing the receivers to ascertain the indebtedness and marshal the assets, prosecuting vigorously any collectible claims, and to apply for further instructions from time to time; meanwhile, they will retain possession of the property and will operate the same.

The controlling element in the operation of the property by the receivers will be the circumstance that such property is devoted to the public service. The traveling public are to be first considered; the service already performed by the roads must be kept up, and improved upon so far as may be. In the matter of improvements the receivers are fortunately relieved—at least in part—from the burden of devising improvements in the system, by the existence of the Public Service Commission. That body is making a careful and exhaustive investigation into all such questions, and may prescribe various changes in construction, equipment, or operation devised and adapted to secure better service. These directions of the Public Service Commission will be carried out by the receivers so far as the income from operating the roads will permit; whether they should also undertake to borrow money in order to complete such changes is a question which can be determined subsequently when it is known just what those changes are. The receipts from car service will be devoted, first, to maintenance, including all necessary repairs and replacements so as to avoid breakdown at any point, and to operation, including not only employés, materials, and supplies, but also the adjustment of all claims arising by reason of such operation, and the obligations due to the state or municipality for percentage of gross receipts, taxes, etc., and the necessary expenses of the receivership. Next in order are certain fixed charges in the nature of rentals agreed to be paid for the use of the roads comprising the system, and interest falling due on various mortgage bonds of such roads, which, by the terms of the leases, the New York City Railway Company has covenanted to pay. Failure to pay one of these items in the case of any component road will be a default of which the owners of that road can avail, if they choose to do so. And in that case they would be entitled to take such road out of the hands of the receivers, either for operation by themselves or for lease elsewhere. It would seem to be to the public interest, because of facility of transfer, that the roads which were being run by the City Railway when receivers were appointed should be operated as a unitary system; certainly the question is too important a one to be decided until in-

vestigation and experience shall have produced such reports from receivers as will give an accurate and complete view of the situation. For the present, therefore, the receivers will continue to pay such rentals and mortgage interest. This will not include the rental to the Third Avenue Railroad, which will fall due the last of this month. A clause in the lease by that road provides that default in the payment of any installment of that rental cannot be availed of for six months. Long before that time sufficient information can be gathered (and made public) by the receivers to give such enlightenment as to the whole situation as will enable the court to deal understandingly with all questions as to payment of all these items of rent and mortgage interest. Before default is made in any case (except the one above referred to, and the rental due October 15th to the Metropolitan Street Railway), petition will be filed setting forth all the facts bearing on the question and asking instructions, and a day will be fixed on which not only the parties to the suit, but all in any way interested (including the Public Service Commission as representative of the traveling public), will be heard as to the most equitable and wisest course to pursue. Until further order the receivers will, also, if the other parties to such arrangements consent, carry out the arrangements by which the New York City Railway Company operates certain railroads not under lease, such as the Dry Dock, East Broadway & Battery Railroad, and the Union Railway. The receivers will forthwith employ an accountant of the highest standing to make an investigation of the books and papers, and also an expert engineer of like standing, not heretofore connected with these roads, to make a thorough examination of their physical condition, so that receivers may be able to prepare an exhaustive report as to the liabilities and assets, condition of the property, and cost of operation. This report will be prepared as soon as may be, consistently with a most thorough investigation. The sooner a comprehensive and accurate report as to the entire situation is made public on the records of this court, the sooner we shall be in a position to determine how best to dispose of the property, and relieve the receivers and the court from the grievous burden of its conservation and operation.

As to some minor matters discussed on this hearing: Criticism has been made as to the phraseology of the decree appointing temporary receivers, which was modeled upon similar decrees in other receiverships in this court. The court had noted these in advance of this argument, and the decree making receivers permanent will require the approval of the court before payment of any rentals or the borrowing of any money. The criticism as to payment of salaries seems not well founded. A fair interpretation of the decree restricts it to salaries of those whom the receivers employ to do work for them, but a change of phraseology in the final decree will make that plain. It is suggested that there should be a provision for preference of damage claims for accidents resulting from operation of the road, or at least for putting them on the same footing as operating expenses. It is premature to decide that now. When the claims are in, a time will be fixed when due notice can be given to every one, and the question discussed and decided.

Upon the argument Mr. Hawes requested the court to make an announcement as to claims for damages for personal injuries sustained in the operation of the road. The request is a proper one and will be complied with. All pending suits against the New York City Railway Company or the Metropolitan Street Railway Company which were begun before receivers were appointed may be prosecuted to judgment, thus liquidating the claim. These claims are against the property of one or other of the corporations now held by receivers, and will rank with all other claims of general creditors of such corporation unless upon the argument heretofore referred to they may be accorded some general or qualified preference. It will be advisable for all such claimants, whose suits are not yet tried, to file a claim with the receivers stating that it is in litigation, and when there has been a liquidation of the amount by verdict and judgment or by compromise approved by this court, they can file an amended claim. The master to whom all claims will be referred will accept this liquidation unless some extremely exceptional circumstances call for some revision.

As to claims for damages resulting from some accident before receivers were appointed, but not yet in suit: These are claims against the property of defendant which may be filed with the receivers, and may go to the master for adjustment. In any case, however, if plaintiff wishes a jury trial, the decree in no way prevents his bringing suit against the company and liquidating the amount by judgment as if the suit had been begun before receivership. When liquidated it will rank with claims already in suit.

For damages resulting from the operation of the road by the receivers, the injured party may, of course, sue the receivers in any court he pleases without asking leave from any one.