MORTON TRUST CO. v. METROPOLITAN ST. RY. CO. et al.

(Circuit Court, S. D. New York. May 6, 1909.)

1. STREET RAILROADS (§ 55*) — INSOLVENCY — SUITS TO ENFORCE RIGHTS OF CREDITORS—PROCEDURE.

In consolidated suits involving the administering of the property of an extensive street railway system and the respective rights of creditors of a lessee and the lessor, both insolvent, technicalities of pleading and practice will not be nicely considered; but the court will adopt such practice as seems best calculated to substantially secure and protect the equities of all parties.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

**2.** STREET RAILROADS (§ 55*)—FORECLOSURE OF MORTGAGES—APPORTIONMENT OF RECEIVERSHIP EXPENSES.

On the separate foreclosure of two mortgages on property of a street railroad system, the first mortgage covering a part only of the property, where receivers appointed under both mortgages have made expenditures and incurred obligations for betterments on various parts of the property, the decree of foreclosure and sale in each case will reserve the right to the court to impose a lien on the property covered thereby for its equitable share of such expenditures when determined.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

In Equity. On motion to dismiss cross-bill.

Bronson Winthrop, for Morton Trust Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.

LACOMBE, Circuit Judge. This is a motion made by complainant to dismiss the cross-bill of the Guaranty Company for technical reasons, and also on the ground that it has not been supported by proof. In a situation so complicated as this one, with so many conflicting interests and different suits, the court is not inclined to be over technical as to pleading and practice. If some way can be found in which the equities of all may be substantially secured, it will be adopted, although some novel practice may be thereby pursued. It seems to me that the cross-complainant has an equity which should be protected in some way, and which, quite possibly, may be secured in the manner proposed without working inequity to those represented by the complainant.

Briefly stated, the situation since August 1, 1908, is this: The receivers appointed by the court, under both mortgages, held possession of the entire property, managing and operating it as a unitary system devoted to a public service. In order to render that service, and to hold the property together, expenditures were incurred in excess of the gross receipts. There resulted a deficit, which no one disputes should be made good out of the corpus of the property which the receivers administered. Had there been but one mortgage, and that one covering the entire property, the matter would be easily disposed of by a clause in the decree of foreclosure and sale, such as will be found in the decree of March 18, 1909, in the Guaranty Trust Company suit. 168 Fed. 937. Under the terms of such a clause, a lien for the deficit would be imposed upon the whole property, and in the redemption of that property from such lien all its parts would ratably contribute. But such is not the situation. The first mortgage does not cover the whole property, and the second mortgage is a second mortgage only as to the property covered by the first, and is a first mortgage on the additional parcels, in which the bondholders secured by the Guaranty mortgage have no interest whatever. If the outcome of all this litigation were to be what it was hoped it would be, namely, a consolidation of both foreclosure actions and a sale of the whole property under both mortgages, there would be no difficulty; but such has not been the course of events. We have had to enter a decree under one mortgage, and are now proceeding with the foreclosure suit under the other mortgage. In the decree already entered a lien

for the entire deficit was imposed upon the property ordered to be sold under that decree. The logical course would be to impose a like lien upon the property to be sold under this decree; it being quite certain that, if offered for sale as a whole, the property offered under the decree in the second suit would be bought by the purchaser of the property sold under the decree in the first suit, because, without these additional parcels, or at least without most of them, the purchaser would not be able to continue the operation of the road as a unitary system.

Early in the trial of this suit, however, it was suggested that a sale might be had under more advantageous circumstances if the property were offered in separate parcels. This suggestion commended itself to the court, and the trial has progressed in the expectation that this could be done; but that question has not been decided finally by the court, and if such a sale could not be had, without working injustice to one interest or the other, a different conclusion may be reached. If the parcels now being foreclosed are sold separately, without reservation of any lien upon them or upon the proceeds, it would come to pass that expenditures which were made with money practically borrowed on the credit of the whole property would be borne solely by the bondholders of a part of the property, while the bondholders of the other parcels, whose value was increased by such expenditures, would contribute nothing towards the repayment. This would certainly be inequitable. It is proposed to provide against such a result by imposing upon the proceeds of each parcel sold a lien for the expenditures made since August 1, 1908, upon such parcel, for its betterment and improvement, which betterment and improvement, it must be presumed, has added to its value, at least as a piece of property adapted for railway purposes.

As the testimony now stands, it may not be practicable to state in dollars and cents precisely how much of these expenditures have been for betterment; but there is sufficient in the record to indicate that it is a substantial sum, and in view of that fact the cross-bill should not be now dismissed, and the motion is therefore denied.