## GUARANTY TRUST CO. OF NEW YORK v. METROPOLITAN ST. RY. CO. et al.

(Circuit Court, S. D. New York.   July 22, 1909.)

1 STREET RAILROADS (§ 58*)—RECEIVERS—OPERATION OF PROPERTY.

In the operation by a court, through its receivers, of an extensive system of street railroads, the first consideration is the maintenance of an adequate service to the public, and the current accounts of the receivers, if the expenditures shown were made to, that end, should be passed without being complicated by controversies between the parties interested in various parts of the system, as to which interest or property should be charged with a particular expense.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

2. STREET RAILROADS (§ 58*)—RECEIVERS—METHOD OF KEEPING ACCOUNTS.

Directions to receivers operating a system of street railroads, as to the manner of keeping accounts, considered and amended.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

In Equity.

This is an application made by receivers to amend an order, entered March 17, 1908, appointing receivers under bill of complaint of the Guaranty Trust Company, trustee under the first mortgage.  The portions of the order which it is sought to amend read as follows:

"That said receivers are hereby required to keep proper books of account, wherein shall be separately stated the earnings and income of the lines of railway and other properties charged in the bill of complaint to be subject to the lien of complainant's mortgage, together with the expenses and disbursements of the receivers with respect to said lines of railway and other properties, and said receivers are hereby required to preserve proper vouchers for all payments made by them in the execution of their said trust.

"The receivers shall enter or cause to be entered in said books from day to day all items of receipts and disbursements which do not require apportionment or which can be apportioned by recognized rules of railroad accounting; and they shall apportion and enter all other items, as soon as may be after receiving a direction in writing as to the method of such apportionment, signed by the Metropolitan Street Railway Company and by the trustees acting under the two mortgages of said company, dated respectively February 1, 1897, and March 21, 1902, and referred to in the bill of complaint herein.  All items requiring apportionment, as to which such direction is not given, shall be entered in a separate account or accounts, and reported to the court as part of the bimonthly accounting of said receivers, and the special master charged with the examination of said bimonthly accounts is hereby authorized and directed to classify and apportion such unapportioned items and to correct and complete the separation of the earnings and income of said property mortgaged to the complainant, from the earnings and income of the remainder of the property operated by the receivers, and to report his conclusions thereon to the court.  The rulings of the special master in stating such accounts shall be subject to review by the court upon exceptions filed by any party in interest."

Davies, Stone & Auerbach, for complainant.

J. Parker Kirlin, for defendant Metropolitan St. Ry. Co.

Masten & Nichols, for receiver of Metropolitan St. Ry. Co. and others.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge (after stating the facts as above). The order as it now stands is objectionable in two particulars:

1. The first of these is due to the inadvertence of the court. It was necessary to provide that certain questions of apportioning items in the accounts, as to the proper classification of which all sides might not agree, should be passed upon by a special master. At that time there were several special masters to whom various matters had been assigned for examination and report, and the court was solicitous that the order should provide that all questions as to apportionment of accounts should be disposed of by the particular special master who was passing the bimonthly accounts of the receivers, and it so directed. When the order was submitted, however, the court overlooked the circumstance that it required such special master to classify and apportion such items "as part of the bimonthly accounting of said receivers." This should not be. The questions presented on such apportionment are different from those which arise on the bimonthly accountings, and hearings on the latter should not be complicated and delayed by the introduction of proofs and contentions which concern peculiarly the distribution of the cost of operating the system between the different interests. It may be well to state specifically what it is that the special master has to pass upon (subject to review by the court) when bimonthly (or monthly) accounts come before him.

The entire property covered by both mortgages and some little additional property not covered by either came into the custody of the court, under a creditor's bill against lessee, supplemented by an application to intervene made by lessor—a practice approved by the United States Supreme Court. In re Konrad, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403. Subsequently the trustees under the two mortgages brought separate suits, under which the same receivers were appointed. The court at the outset was thus charged with the care and custody of a unitary system of connecting street railroads which was in active operation in a populous city. In placing this system in the hands of its receivers, the court instructed them that:

"The controlling element in the operation of the property by [them] will be the circumstance that such property is devoted to the public service. The traveling public are to be first considered; the service already performed by the roads must be kept up and improved upon so far as may be. In the matter of improvements, * * * the Public Service Commission * * * is making a careful and exhaustive investigation * * * and may prescribe various changes in construction, equipment, or operation devised and adapted to secure better service. These directions of the Public Service Commission will be carried out by the receivers so far as the income from operating the roads will permit. Whether they should also undertake to borrow money in order to complete such changes is a question which can be determined subsequently when it is known just what those changes are." Pennsylvania Steel Co. v. N. Y. City Ry. (C. C., Oct. 8, 1907) 157 Fed. 443.

Of these directions the Supreme Court was kind enough to say:

"The orders * * * giving receivers instructions are most conservative and well calculated to bring about the earliest possible resumption of normal conditions when those who may be the owners of the property shall be in possession of and operate it." In re Konrad, supra.

So far as the court is advised, the receivers have operated the whole system in conformity with these instructions, and the examination conducted by the special master on bimonthly accountings is for the purpose of determining whether their statement of receipts is accurate, and whether their disbursements are reasonable and proper under their general powers and the general and specific directions of the court. These questions must, of course, be determined in consideration of the whole property as a unitary system of public service. It has been most unfortunate that the zeal of counsel who represent the respective mortgage trustees seems to make it impossible for them to appreciate that those mortgages are based upon property devoted to a public use. As between themselves there are many questions to be settled, when we come to the distribution of items of receipt or disbursement which the special master may have decided to have been properly received or made by receivers as receivers of the whole property. For example, out of money received generally from the operation of the whole system, some car barn may have been rebuilt upon land which is covered only by the second mortgage, and the trustee of the first mortgage may wish to have that item of expenditure for permanent improvement of land on which he has no lien so charged that no portion of it shall fall on receipts (or corpus) of property which is covered by his mortgage, and which is not directly benefited by such expenditure. We had such an instance on the hearing of the cross-bill of the present complainant, defendant in the Morton Trust Company suit. See decision on motion to dismiss cross-bill May 6, 1909. Morton Trust Co. v. Metropolitan Street Railway Company (C. C.) 170 Fed. 336.

But the propriety of receivers' expenditures in carrying on the operations of this unitary railway system and conserving its whole property is not affected by the circumstance that the second mortgage covers the whole property and the first mortgage covers a part of it. If any particular item be an expenditure necessary and proper to be made for the operation and conservation of the property, it will be passed by the special master, and, when it is approved by the court, neither the receivers nor their bondsmen may thereafter be called in question as to the propriety of such expenditure.

The circumstance that the income from operating the system in such a manner as to afford a reasonably efficient public service is not large enough to pay all fixed charges and leave any surplus applicable to mortgage indebtedness is unfortunate; but, so long as the system is in the hands of the court, it will be operated in conformity with the instructions, quoted supra, even though the result may be some impairment in the value of these mortgages. That is the risk which every one takes who invests in the securities of a public service corporation. If the mortgagees are dissatisfied with this method of administering the estate, they have their remedy. If they will be more expeditious in the future than they have been in the past, they can secure an opportunity to buy in the property and run it to suit themselves, or sell out its component units for what they will bring. The sooner the court and its officers are relieved of it, the better for all parties.

All questions as to apportionment of items of receipt and disbursement properly between all conflicting interests will be examined into and reported on by the special master and reviewed by the court at the proper time, or they may be disposed of under one or other of the cross-bills, and the court, by reserving a lien upon proceeds or corpus of property covered by second mortgage, will secure the trustee of the first mortgage against loss; but such questions should not be injected into the proceedings upon the bimonthly (or monthly) accounting.

2. When the order of March 17, 1908, was made, it was of course, understood that it would be highly desirable that the accounts of the receivers should be so kept that the earnings and income of the lines of railway and other properties covered by the first mortgage only, together with expenditures and disbursements in respect to the same, should be so kept as to facilitate the separate statement of such items of income and expenditure. It was also fully understood that it was not possible to do this with absolute accuracy. It is needless to rehearse here the repeated deliverances of the court as to the complications of receipts and disbursements, which rendered it necessary that some arbitrary system of distribution should be agreed to by all parties, or in the event of their failure so to do settled by the special master, since the "recognized rules of railroad accounting" would not be a sufficient guide for the auditor's office. When the order was being settled, it was stated that the two trustees and the company would agree in writing upon a method of apportionment which would eliminate all difficulties, and the court gathered the impression that this would be done within a few days. Under that impression the order was signed as submitted, although it contained a requirement as to keeping accounts, which could not be complied with unless such agreement were made.

Despite repeated inquiries and suggestions by the court, weeks and months elapsed without the filing of any such agreement, and it is now stated that counsel for one of the trustees insists that receivers are in default for not complying with the requirements of the order. Counsel for first mortgage trustee asserts that he at one time submitted a form of agreement as to method to one of the receivers, who after consultation with the auditor criticised it as impracticable and unnecessarily expensive. Apparently the force of such objection was appreciated; at any rate, the paper so submitted was taken back, and no written directions such as the order contemplated have been filed. It is understood that an agreement as to method of accounting has now been reached, and that the matter is in shape to be regulated by a specific order, which the court is prepared to make when the written agreement is submitted; but the order of March 17, 1908, should be amended so as to put it in the form it would have taken had the court been advised at the time that it would take the trustees and the company over a year to settle upon some method of keeping books and filing reports which would be satisfactory to them.

The order of March 17, 1908, is therefore amended, nunc pro tunc, by striking out the paragraphs above quoted and substituting therefor the following:

"The receivers will supplement their present system of accounting by making such additions or changes as may be agreed upon in writing by all parties interested and approved by the court, and all questions as to the manner and form of keeping their books and records, and as to the time and manner of their accounting separately as to the receipts and disbursements on behalf of conflicting interests, are reserved for further determination by this court."

Then, if counsel for trustees will prepare an order providing specifically for such details as may now be agreed upon, and referring to the special master such matters of detail as cannot be agreed upon, the same will be signed.