## PYRITES CO. v. SILICA GEL CORPORATION.
### No. 2176.

District Court, D. Maryland.
Oct. 22, 1934.

Roszel C. Thomsen, Emory H. Niles (of Niles, Barton, Morrow & Yost), and Joseph T. Brennan, all of Baltimore, Md., and Wm. Burnet Wright, for petitioners.

G. Ridgely Sappington and Wilson K. Barnes, for respondent.

CHESNUT, District Judge.

The defendant, the Silica Gel Corporation, is in this court in federal equity receivership. The creditors' bill did not expressly allege insolvency or pray for immediate liquidation but represented that the corporation was unable to meet current indebtedness and that its available assets consisted principally of commercially undeveloped patents and that receivership was necessary to conserve its assets for the ultimate benefit of all creditors. The corporation consented to the receivership by a vote of the majority of its board of directors but a minority thereof intervened stating in substance that they had originally opposed the receivership but consented to what was referred to as a limited or holding receivership. See Miller et al. v. Pyrites Co., Inc., et al. (C. C. A.) 71 F.(2d) 804. The receiver was appointed on April 22, 1933. The corporate affairs have since then been managed by the receiver who has filed monthly reports of receipts and disbursements.

On July 13, 1934, on the petition of the receiver the papers in the case were referred to an auditor to state an expense account including the present allowance and payment of such wage and salary claims as were entitled to preferential payment in accordance with the Maryland statute, art. 47, § 15 of Bagby's Annotated Code of Maryland. The relevant portion of this statute reads as follows: "Whenever any * * * body corporate * * * shall have * · * * its property or estate taken possession of by a receiver under a decree of a court of equity, in the distribution of the property or estate of such * * * body corporate, all the money due and owing from such * * * body corporate *for wages or salaries to clerks, servants, salesmen or employees* contracted not more than three months anterior to the * * * appointment of receiver, shall first be paid in full out of such property or estate, after payment of the proper and legitimate costs, expenses, taxes and commissions, and shall be preferred to all claims against the

property and estate of such * * * body corporate, except the lien claims of such persons as shall hold liens upon such property or estate, recorded at least three months prior to such assignment, adjudication or decree." (Italics supplied.) In a number of Maryland cases this statute has been construed and applied in determination of what classes of persons were entitled to its benefit. See American Casualty Insurance Co.'s Case, 82 Md. 565, 34 A. 778, 38 L. R. A. 97; Lewis v. Fisher, 80 Md. 140, 30 A. 608, 26 L. R. A. 278, 45 Am. St. Rep. 327; Baltimore Trust Co. v. Rowe, 141 Md. 160, 118 A. 405; Roberts v. Edie, 85 Md. 183, 36 A. 820; Perkins v. Barr, 126 Md. 94, 94 A. 533. See also In re Rodgers & Garrett Timber Co. (D. C. Md.) 22 F. (2d) 571.

Claims for preferential payment for wages or salaries were presented to the auditor by counsel by and on behalf of various officers and employes. Counsel for the receiver conceded before the auditor that certain of the claimants were entitled to preferential payment but opposed the claims of others. In due course an auditor's account was stated allowing certain claims but rejecting others not entitled to preference under the statute. Among those rejected were the claims of Messrs. Ernest B. Miller, J. Roberts Wilson, James C. Patterson, Frank C. Dehler and William Marshall. No exceptions were filed to the auditor's account by any of these claimants and their counsel concede that the auditor was justified in rejecting their claims as not within the statute, but thereafter each of the claimants has filed a petition in the case praying that the amount of unpaid salary accruing prior to the receivership and within three months theretofore shall now be paid, on the ground that the "claim is entitled to priority of payment in this equity proceeding because the services upon which the claim is based created a current expense of ordinary operation of the business, were necessary to keep it a going concern, and were rendered with the intention of the parties that they should be paid out of current earnings of the business," and also alleging that the receiver had collected and has on hand sufficient "current funds" to pay the claims of the petitioners and of all other persons similarly situated. The answer of the receiver in each case admitted that he had on hand "sufficient current funds" to pay the claims but denied that the services of the petitioners were necessary to keep the business a going concern and denied that it was the intention of the parties that the petitioners' services

"should be paid for out of the current earnings of the business"; and denied that the petitioners were entitled to preferential payment.

The contention of counsel for the petitioners as now advanced is based principally on the recent decision of the Circuit Court of Appeals for this Circuit in Bowen v. Hockley, Receiver of the Davison Chemical Co., 71 F. (2d) 781, 783, in which case the court held that installments currently accruing after the receivership under a compensation award made under the Maryland Workmens' Compensation Law should be paid by the receiver as an expense of operation of the business. It is conceded by counsel that the factual situation with regard to the claims in this case is different from that in Bowen v. Hockley but nevertheless it is urged that the principle of that decision is broad enough to cover the present claims. It is said that the basic theory of the decision in Bowen v. Hockley is that "he who seeks equity must do equity," and that as the receivership is being conducted by this court for the benefit of creditors the court has the power, and should exercise it in this case, to require the receiver to make the payments for these overdue salary claims. It is further said that "claims for human services, whether founded in contract (wages), workmens' compensation statutes, or no contract at all (old age pensions) are entitled to the preference," and it is further contended (as in this case it is necessary to do to be successful) that such "claims for human services" must be preferred over those of other general creditors for supplies furnished to the corporation or based on other considerations.

The Silica Gel Corporation is an ordinary commercial corporation formed for and engaged in the exploitation of silica gel patents for commercial refrigeration and other analogous uses. There are no mortgage or other lien claimants. It is not a railroad or other public utility. It is, however, contended by counsel that the principles upon which labor and supply claims originating within six months prior to receivership have been preferentially allowed in railroad cases are properly to be extended (a) to similar claims against private corporations; (b) without proof of the actual express intention of the parties to be paid out of current receipts; (c) irrespective of any provision of the particular state statute and (d) in the case where there is no mortgage upon the assets of the corporation, the claims of general creditors with supply claims are *pro tanto* to be re-

duced by the allowance of labor claims. And counsel urge upon me that the principle of Bowen v. Hockley necessarily supports these contentions.

It is needless to say that I have very carefully studied the opinion of the court in Bowen v. Hockley as the law of this circuit and if it goes to the extent contended for by counsel for these petitioners, it should be followed and here applied. But it is contended by counsel for the receiver that the petitioners' contentions are far beyond the scope of what was actually decided in Bowen v. Hockley; and that the opinion of the court must be considered in relation to the particular claim there passed on. A careful study of the opinion leads me to the conclusion that the equitable principle there applied is that in an operating receivership for the benefit of creditors, the court has the power as a matter of equity to require the receiver, who is acting for the benefit of general creditors, to make preferential payment of such claims as in the determination of the court have an established equity over and above that of other creditors, whether mortgagees or lien claimants or merely general creditors; and in the exercise of this equitable power payment in such a case of currently accruing installments under a prior workmens' compensation award should be made by the receiver, as a current expense of the business, "from income earned by the business while it is being preserved and carried on as a going concern by the court." Reference was made to the federal statute, 28 USC, § 124 (28 USCA § 124), requiring that in the management of property by federal receivers "such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." The nature of the particular claim allowed seems to have been analogized to currently accruing taxes on the property which must be discharged by the receiver as would have been required by the owner of the property if not in receivership. The nature of the particular claim in that case was described by the court as follows: "Compensation awards differ from ordinary debts of the corporation in a number of particulars, but there is this difference in their origin: the ordinary debt arises out of credit extended to the corporation by the claimant; the compensation claim arises out of the status or relationship existing between employer and employee. The ordinary debt represents loans or advancements made to the business. The compensation claim arises out of the business itself. A business is more than the property which it employs."

The court put aside the question as to whether such claims could be given priority in the absence of statute by payment out of capital assets upon the winding up of the corporation. What was ordered to be paid were only current installments of the compensation award from income earned by the business of the receivership.

While the equitable principle relied on in the case is certainly broader than its specific application, I do not think the opinion can fairly be considered as indicating that the principle should be applied to the present petitions. Reference in the opinion was made to the federal equity doctrine first announced in Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, and followed in subsequent decisions by the Supreme Court and in other federal cases. But it was expressly stated that the analogies were not complete and were made only as illustrations of the application of the particular equitable principle that "he who seeks equity must do it."

The question now presented is whether this equitable principle should be applied to the preferential payment of the salary claims of the officers and superior employes in this case, in preference to the claims of other general creditors. Or, as otherwise stated, is there an equity in favor of such claims superior to the claims of other general creditors.

Apposite to this is what was said by the Circuit Court of Appeals for the First Circuit in a somewhat similar case, Van Raalte v. Enterprise Transp. Co., 169 F. 606, 607: "The general rule is that unsecured creditors stand alike and should have equal equity, and it follows that, in order to justify the interference of a court of equity, to enforce the claim of one creditor against others and give it priority, it must be made to appear, through the intrinsic nature of his claim, that he has an equity superior to that of the creditors over whom he claims a preference."

It is true there are similarities between this case and Bowen v. Hockley but there are also important differences. The cases are alike in that (1) they both deal with operating receiverships; (2) where claims of general creditors only are involved; (3) and the corporation in receivership is a private as distinct from a public or quasi public corporation and (4) the equitable principle invoked

is the same. But the most important differences are that (1) the claim there established was distinctly and importantly differentiated in its nature from the claim of other creditors and (2) what was allowed was currently accruing installments on the claim falling due during the operation of the receivership which were (3) ordered to be paid out of current income, because in the nature of a current expense of operation analogized to currently accruing taxes. What is sought in this case is to create a distinction in order of payment between ordinary general creditors, and the basis of the distinction sought to be established is between (1) creditors who have furnished goods or loaned money (and rendered certain particular service) and (2) those who have performed personal services as officers of the corporation or general employes. And it is to be noted that the claims to be preferred are for salaries of officers and superior employes *and not labor claims*. Furthermore, preferential payment is sought for the *whole amount* of these claims, and the payment is sought not merely from currently accruing income but from what it called *current funds* in the possession of the receiver.

In considering the question presented, attention must first be given to the very practical matter as to whether there are in this receivership now available funds from which to make this payment as a payment from *current* funds of the receivership, or whether, if the payment is now made, it will not in practical effect be a preferential payment out of capital assets. It appears that the unpaid salaries due to the petitioners (and others in similar class for whom payment is also now sought preferentially) amount to $12,-356.03, all arising within a few months prior to the date of the receivership. An analysis of the receiver's last monthly report filed October 5, 1934, which contains a summary of receipts and disbursements during the whole of the receivership period from April 22, 1933 to September 30, 1934, shows that the receiver's bank balance as of the latter date was $40,585.49; but from the report and the testimony of the receiver given at the hearing it appears very doubtful indeed whether this amount or any very substantial portion thereof can be regarded as *current income*. Certainly it does not represent surplus earnings of the receivership, all things considered. The report shows that the receiver's total receipts have been $157,002.73 and the total disbursements $119,830.88. Included in the receipts is a particular payment of $25,000 received from the Bryant Heater

Company in consideration for a license to use Silica Gel patents for commercial and domestic refrigeration which was made as a payment in advance on account of royalties to accrue for a three-year period, beginning about June 8, 1934. This license contract was made pursuant to an order of court after hearing counsel for some of the intervenors in this case in opposition, and appeal is now pending from that order. Pending the appeal it would seem obviously unwise if not improper to consider this particular sum as available for payment of the present claims. If it be deducted from the present bank balance of $40,585.49, there remains only $15,-585.49 as currently available funds. Even if the $25,000 is included it must also be borne in mind that it is in the nature of an advance payment which may possibly be the full amount received under the license contract for the development period of three years and cannot fairly be regarded as presently and currently available funds in the sense of current income already earned. The receivership has incurred substantial expenses for which claims have not yet been allowed or audited. The receiver has so far been paid no compensation for his personal services; nor has any allowance so far been made to his counsel for current services and special litigation growing out of the receivership. In addition to these charges which must be kept in mind, there will necessarily be added compensation to a special receiver, other than the general receiver, appointed to represent claims of all creditors, including those of the petitioners in this case, in defense of a very large claim preferred by the Davison Chemical Company which resulted in the allowance thereof in the amount of about $3,600,000, from which an appeal is now pending by the special receiver and other parties. And special counsel were appointed by the court for the special receiver in that particular litigation. No allowances yet have been made to either the special receiver or his counsel. In view of this financial condition of the receivership it would seem apparent that there is certainly no fairly available current income or surplus earnings of the receivership as a fund for the payment of the present claims which amount to $12,356.03. And this would seem to be of itself a sufficient objection to the propriety of making the allowance at this time even if the claims were considered to be equitably established.

But in addition to this practical consideration, in my opinion, there is no superior equity in this case in favor of these salary

claimants which entitles them to preferential payment over other creditors. The claimants and their respective positions with the corporation were as follows: Mr. Ernest B. Miller was senior vice president in charge of manufacturing operations; Mr. James C. Patterson was vice president in charge of sales (both directors of the corporation and Mr. Miller a large stockholder); Mr. J. Roberts Wilson was secretary of the corporation in charge principally of bookkeeping and accounting; Mr. Frank Dehler was nominally, at least, an assistant secretary, in charge of foreign activities, and Mr. William Marshall was a mechanical engineer. All, except Mr. Ernest B. Miller, were continued in employment by the receiver and are still so employed with the exception of Mr. Patterson who has recently taken a position with the Bryant Heater Company. Their salary compensations in November 1932 (after recent substantial reductions therein) were in the following annual amounts; Mr. Ernest B. Miller, $13,440; Mr. J. C. Patterson, $10,800; Mr. J. Roberts Wilson, $7,680; Mr. F. C. Dehler, $3,600, and Mr. William Marshall, $2,400. None of these can be considered to have been in the wage earning class. All of them were expressly advised prior to January 1, 1932, of the precarious financial condition of the company and the uncertainty of its ability to continue payment of their salaries. They accepted the situation and continued in their employment doubtless hoping that financial conditions affecting the company would improve. All were paid the reduced scale of salaries up to January 1, 1933. By stipulation of counsel for all the parties (with the exception of Mr. Ernest B. Miller) filed in the case giving some analysis of the nature and amount of creditors' claims against the company, it appears that unpaid indebtedness for materials and supplies to the extent of $5,707.55 was incurred by the company between October 22, 1932 and April 22, 1933, and the amount incurred for moneys advanced and materials and supplies prior to October 22, 1932, and still unpaid was $1,983,920.84, of which $1,976,184.99 was a part of the total claim of the Davison Chemical Company heretofore allowed in the full amount of $3,600,000. Other claims for services against the corporation, including attorneys' fees, patent attorneys' fees, surveys made, and retaining fees of certain technical men, incurred between October 22, 1932 and April 22, 1933, amounted to $2,150, and similar items incurred prior to October 22, 1932, and still remaining unpaid aggregate about $17,000. (Counsel for Mr. Miller filed a separate analysis with somewhat different figures—but the differences are not deemed of importance so far as the particular discussion is concerned.) The total of all creditors' claims other than the Davison Chemical Company amount to nearly $100,000. The assets of the corporation consist of certain tangible property worth less than $100,000, and its patent rights.

To some extent counsel for the petitioners seek support for their contention in decisions other than Bowen v. Hockley. Thus it is said that the doctrine of Fosdick v. Schall has been extended by some courts to private corporations in the allowance of both labor and supply claims. Dickinson v. Saunders (C. C. A. 1) 129 F. 16; Drennen v. Mercantile Trust & Deposit Co., 115 Ala. 592, 23 So. 164, 39 L. R. A. 623, 67 Am. St. Rep. 72; LeHote v. Boyet, 85 Miss. 636, 38 So. 1, 3 Ann. Cas. 705; George v. Pigford, 97 Miss. 332, 52 So. 796, 797; Clark on Receivers, vol. I, § 675, p. 971; 15 Minn. Law Review, 267. In the Mississippi cases the allowances were made in preference to the claims of other general creditors. And it is to be particularly noted that the claims for services allowed were for *wages of laborers* and not salaries of officers of the corporation. In the Pigford Case the court said: "We decline to extend the doctrine beyond the claims of laborers, the wage class, who are favored by law, and justly so, as illustrated by our statutes giving the laborer a lien on crops produced by him, and providing there shall be no exemption from liability to judgment for labor performed, and also by the common law, which gives laborers who receive chattels for repair, at the request of the owner, the right to retain same as security for their debt. 19 Am. & Eng. Encyc. of Law (2d Ed.) 8. There is no difficulty in applying the doctrine in question to the claims of laborers; while, on the other hand, great injustice and inequality would result in its application to any other class of claims."

As already observed there is not a complete analogy between the allowance of labor claims over mortgagees under the doctrine of Fosdick v. Schall, and the allowance of such claims over those of other general creditors. There is an obvious equity in favor of the wage-earning class for unpaid services which have contributed to the value of the property subject to a mortgage lien. And the same principle creates an equity in favor of supply creditors and others who have enhanced the value of the property subject to the lien. But the equity is not equally obvious in fa-

vor of labor claims as against other general creditors, in the absence of statute. Nevertheless it may fairly be said that there is some growing support for the proposition, and it is not doubted that it is within the scope of the equitable power applied in Bowen v. Hockley and some other cases, and may be equitably supplied under the special facts and circumstances of particular cases. One basis for the doctrine was stated by Judge Simonton of this Circuit in Finance Co. v. Charleston, C. & C. R. Co. (C. C.) 49 F. 693, 694, as follows: "Without considering liens or equities, acting only in its discretion, it (the court) imposes upon the suitors, as the condition of granting their request, that such employees be paid, not only accruing wages, but such as have accrued within a reasonable period. This is not a right vested in the employees, or an equity administered in their favor. It is a personal protection given to them by the court ex gratia, moved thereto by the fact that this class depend upon their daily labor for their daily food." While this was said in the case of a railroad receivership there is much force in the view expressed in Clark on Receivers, supra, to justify the extension of the doctrine to private corporations of large gross income in an operating receivership.

But it is, I think, impossible to find a similar equity in favor of the chief executive officers of a corporation, as a class, to be preferred to creditors who have rendered other services and loaned money or furnished supplies to the corporation. In my opinion such a preference would be quite inequitable, at least in this case. If adopted as an established doctrine it would permit the managing officers of a corporation to have preferential payment of salaries, often very substantial, accruing at the same time these officers with knowledge of the financial situation of the corporation were incurring debts for the corporation to other creditors less favorably situated as to means of knowledge as to the corporate finances. Even as against mortgage creditors the doctrine of Fosdick v. Schall has not been applied to justify the payment of salary claims to corporate officers except possibly in a few cases where the order was uncontested by creditors or agreed upon as a result of negotiations leading to the receivership. Thus, in National Bank of Augusta v. Carolina, K. & W. R. Co. (C. C.) 63 F. 25, 26, Judge Simonton said: "No case can yet be found which extends the equity to the president of the insolvent company. He knows exactly its condition. He has full notice of the liens existing. He is not bound to furnish his services a day after his remuneration seems uncertain. He cannot be included among that class of employees who have no means of ascertaining whether a short credit to the company is safe or not." See also Title Insurance & Trust Co. v. Home Telephone Co. (D. C. Wash.) 200 F. 263, 267, where it was said: "No equitable reason appears why the president of a corporation— presumably as much or more conversant with its condition than any one else—would be entitled to a preference for any services he might perform for his company. No case has been cited allowing the president of an insolvent corporation such a preference, and it is confidently asserted in National Bank of Augusta v. Carolina, K. & W. R. Co. (C. C.) 63 F. 25, that no such case can be found."

In Pennsylvania Steel Co. v. New York City Ry. Co. (C. C.) 157 F. 440, 446, Judge Lacombe, in commenting on a prior order in a railway receivership, said: "The criticism as to payment of salaries seems not well founded. A fair interpretation of the decree restricts it to salaries of those whom the receivers employ to do work for them, but a change of phraseology in the final decree will make that plain."

It is said by counsel for the petitioners that in some cases preferential payment has been made to attorneys of the corporation for pre-receivership services. In Gurney v. Atlantic & G. W. Ry. Co. et al., 58 N. Y. 358, it appears that the order of court construed to authorize such an allowance was practically an agreed order. In Louisville, E. & S. L. R. Co. v. Wilson, 138 U. S. 501, 11 S. Ct. 405, 34 L. Ed. 1023, it was held that "wages of employees" ordered to be preferentially paid, did not justify the payment for services of counsel employed for special purposes; although in the same case an allowance was made for services of counsel which had directly contributed to the value of the mortgaged property. Compare Finance Co. v. Charleston, C. & C. R. Co. (C. C. S. C.) 52 F. 526, and Blair v. St. Louis, etc., R. Co. (C. C.) 23 F. 521.

In my opinion there is no greater equity in favor of the allowance of the claims of the officers in this case than existed in favor of the presidents of the several corporations in the cases just cited. They were all definitely advised of the financial situation of the corporation, and in performing their services they took their chances of being paid along with other creditors who extended credit to the corporation. Doubtless in a general sense

they looked to the coming in of current funds of the corporation for their compensation but I do not construe the somewhat vague and uncertain testimony at the hearing on this point as indicating that they looked to any particular fund, even if the corporation had the right as against its other creditors to earmark particular funds for payment of salary claims, which I think is far from what was actually done in this case.

In determining whether the petitioners are entitled to an equity superior to that of other creditors, the safest analogy to apply is the particular Maryland statute upon the subject, even if it is not binding on this court in federal equity. It represents the long standing and deliberate policy of the State of Maryland which defines the extent to which wage and salary claims should be preferred over other creditors. And as it is conceded (and has been ruled by the auditors without exception thereto) that the petitioners (including William Marshall who was not an officer) are not within the class of employes entitled to preferential payment under this statute, I do not feel justified in creating an equity in their favor superior to that of general creditors contrary to the long established policy of the Maryland law.

In this connection it is said in Clark on Receivers, vol. I, § 675: "Labor claims are protected in most states by statutes. It is only in some of the southern and other states where labor claims are not protected by statutes that courts have been obliged to have recourse to equitable principles in order to give a preference to labor claims." Reference may also be made to the analogous provision in the Bankruptcy Act, § 64b (5) providing for preferential payment for "wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $600 to each claimant." Under this subsection it seems generally to have been held that officers of a corporation and managers of a business are not entitled to preferential payment for unpaid salaries. See Collier on Bankruptcy (13th Ed.) vol. II, pp. 1467, 1468, and notes, although in the decisions emphasis seems to be properly placed more on the nature of the work done by the claimant than on his mere title. See also Notes page 1468 in 1934 Cumulative Supplement of Collier on Bankruptcy (13th Ed.).

For these reasons the claims of the petitioners will be denied and counsel may submit the appropriate orders accordingly.