ROBERTS & SON ET AL. *vs.* ARTHUR E. EDIE ET AL.

*Preference in Payment of Wages Due to Employees by Insolvents— Time Within which Wages Must Be Earned.*

Code, Art. 47, sec. 15, provides that when any person shall execute an assignment for the benefit of creditors or be adjudicated an insolvent, &c., moneys due for wages to employees contracted not more than three months prior to the execution of such assignment or to the *adjudication* in insolvency shall be entitled to priority of payment. *Held*,

1st. That the time limit fixed by the statute relates to the *adjudication* of insolvency and not to the filing of the *petition* in insolvency, and claims for wages due less than three months before the filing of the petition, but more than three months before the adjudication, are not entitled to priority in the distribution of the insolvent's assets.

2nd. That where an assignment for the benefit of creditors is executed and it is afterwards annulled in the proceedings by which the assignor is adjudicated an insolvent, claims for wages which were

due less than three months before the execution of the deed but more than three months before the adjudication are not entitled to priority, because the assets are not distributed under the deed and the same having been vacated is to be treated as if it had never existed.

Appeal from an order of the Circuit Court for Harford County (WATTERS, J.), in the matter of the insolvent estate of Arthur E. Edie, overruling exceptions to the auditor's report distributing the balance of the estate and finally ratifying the same.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and BOYD, JJ.

*H. J. Jewett, Jr.* (with whom was *S. A. Williams* on the brief), for the appellants.

*George L. Van Bibber*, for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

The question presented by this record is a narrow one, which arises out of the following facts : On the tenth of October, eighteen hundred and ninety-two, Arthur E. Edie executed a deed of trust to Henry C. Brenneman for the benefit of the grantor's creditors. On the succeeding day an attachment was sued out by Roberts and Son against Edie and was laid in the hands of Brenneman as garnishee, and was likewise levied on certain personal property described in the schedule annexed to the return made by the sheriff. On November the thirteenth, eighteen hundred and ninety-four, judgment of condemnation was entered. In the meantime, that is to say, on the fourth of November, eighteen hundred and ninety-two, a petition in involuntary insolvency was filed against Edie, but the proceedings were not brought to a conclusion until November the sixth, eighteen hundred and ninety-four, on which date Edie was adjudicated an insolvent and a preliminary trustee was appointed. The assets in the hands of the conventional trustee

were then turned over and subsequently passed to the permanent trustee in insolvency. Before the insolvency proceedings were begun Edie carried on a business in the prosecution of which he engaged many employees. The wages of these employees for the months of August and September, eighteen hundred and ninety-two, were due and unpaid when the deed of trust was made, and when the insolvency proceedings which superseded and struck down that deed were inaugurated; and the whole fund in the hands of the trustee is totally insufficient to pay these wages in full. In distributing the funds in the insolvency case the auditor allowed the costs and expenses of the proceeding, the commissions of the trustee, and then apportioned the entire residue amongst the employees in part payment of their claims for wages, for August and September, 1892, to the exclusion of the claim of Roberts and Son, and of another judgment recovered by a creditor named Bennington.

Roberts and Son and Bennington thereupon filed exceptions to the ratification of the audit. These exceptions were overruled, the audit was ratified and the exceptants have appealed. The single question is, are these claims for unpaid wages entitled to a priority over the judgment creditors in the distribution of the fund into which the insolvent debtor's assets have been converted?

The solution of this question hinges on the meaning of sec. 15 of Art. 47 of the Code. That section as it stood prior to its amendments by the Act of 1896, ch. 184 (which, however, makes no alteration affecting the pending question) provided: "Whenever any person or body corporate shall make an assignment for the benefit of his, her or its creditors, or shall be adjudicated insolvent upon his, her or its petition, or upon the petition of any creditor or creditors, or shall have his, her or its property or estate taken possession of by a receiver under a decree of a Court of Equity, in the distribution of the property or estate of such person or body corporate, all moneys due and owing from such person or body corporate for wages or salaries to clerks, servants or

employees contracted not more than three months anterior
to the execution of such assignment, adjudication of insol-
vency or appointment of receiver, shall first be paid in full
out of such property or estate, after payment of the proper
and legitimate costs, expenses, taxes and commissions, and
shall be preferred to all claims against the property and
estate of such insolvent person or body corporate, except
the lien claims of such persons as shall hold liens upon such
property or estate, recorded at least three months prior to
such assignment, adjudication or decree.'' Now, the ob-
vious design of this legislation was to provide in three clearly
marked classes of cases, a qualified preference in favor of
unpaid wages and salaries—qualified in so far as it was made
subordinate to the liens alluded to in the concluding lines
of the section just quoted. These three distinct and sep-
arate classes are, *first*, where an assignment for the benefit
of creditors shall be made ; *secondly*, where the person
owing the wages shall be adjudicated insolvent ; and *thirdly*,
where the debtor shall have his property taken possession
of by a receiver under a decree of a Court of Equity. The
wages and salaries which are given a preference in these in-
stances are the wages and salaries '' contracted not more
than three months anterior,'' *first*, to the execution of such
assignment; *secondly*, '' those contracted not more than three
months anterior to such adjudication of insolvency ;'' and
*thirdly*, '' those contracted not more than three months an-
terior to such appointment of receiver.''

It is apparent, then, at the outset, that unless the wages
and salaries allowed by the auditor are claims for wages and
salaries due not more than three months anterior to some
one of the three points of time specifically designated in the
statute, they do not fall within the authorized preference
given therein, and must be deferred to debts having con-
fessedly a valid priority.

There is no pretence that these claims for wages are en-
titled to a preference on the ground that they represent

wages contracted to be paid not more than three months anterior to the appointment of a receiver; because no receiver ever was in reality appointed. That contingency is, therefore, eliminated from the case.

The deed of trust executed in October, 1892, was stricken down by the adjudication of insolvency because it was made one of the grounds upon which that adjudication was founded, and hence it is to be treated as it never had existed at all. The wages and salaries given a preference when a deed of trust or assignment for the benefit of creditors has been executed, are the wages and salaries which have accrued not more than three months prior to the execution of the deed of trust or assignment *under which* the assets are actually distributed; and not some other and different deed that has been set aside, vacated and declared of no effect. So the controversy is narrowed down to the inquiry whether these wages claims fall within the only remaining contingency, that is to say, were they contracted not more than three months anterior to the adjudication of insolvency?

If the statute, when it says " adjudication of insolvency," means an actual formal *adjudication* as contra-distinguished from the mere filing of a petition to *procure* such an adjudication, then these claims, contracted in August and September, 1892, were contracted more than three months anterior to November the sixth, eighteen hundred and ninety-four, the date of the adjudication, and are consequently not entitled to be preferred. Does the statute mean what it says, or does it mean something else? It must be borne in mind that the predominant policy of the insolvent system is intended to secure an equality amongst creditors and to prohibit all preferences except such as are expressly permitted. When, therefore, doubtful or ambiguous provisions of the enactments making up the system are to be construed, that interpretation which best comports with and gives effect to the ultimate and controlling purpose of the statute must be adopted and applied, rather than one which would totally or even partially defeat or thwart that design.

And this is but another way of saying that preferences which do not clearly and unequivocally appear to be authorized ought not be created by mere construction, since the tendency of all preferences is to frustrate, to some extent, equality amongst creditors, and thus to disturb the very policy which lies at the root of all the insolvent laws.　It was this principle which induced us in the *Casualty Company's case*, 82 Md. 567–568, to give to the word "*Employee*," used in the very section of the Code now under discussion, a more restricted signification than had been applied by our predecessors in *Moore's case*, 14 Md. 558, to precisely the same word contained in the Act of 1854, ch. 23, relating to a different subject.　The plain language of the section of the Code which we are now considering includes only claims for wages contracted not more than three months anterior to an *adjudication* of insolvency.　A *petition* in insolvency and an *adjudication of insolvency* are two entirely and essentially different things.　There can be no adjudication of insolvency without a petition, either voluntary or involuntary, but there may be a petition without an adjudication.　Whilst it is true that the adjudication relates back, for certain purposes, to the date of the petition, yet the two things are distinct events that may happen after a considerable interval of time.　To declare, then, that the statute when it fixes the adjudication of insolvency as the period from which the three months are to be reckoned backwards, should be read as if it had prescribed that the filing of the petition was the point of time which the three months must antedate, would be little, if anything, short of judicial legislation deliberately substituting one period of time for another.　This, of course, we have no authority to do.　It was competent to the Legislature to fix such period of time as they might see fit.　In the case of a receivership they designated the appointment of the receiver, and not the date of the filing of the bill ; and in cases of insolvency they selected the date of adjudication and not the time when the petition was filed.　Whilst it was held in *Gottschalk and Co.*

v. *Smith and Hanna*, 74 Md. 563, following *Pinckney* v. *Lanahan*, 62 Md. 448, that the title of the trustee in insolvency relates back to the filing of the petition, this in no way reflects upon the pending controversy. To give full effect to the insolvent law and to prevent the debtor's assets from being seized under legal process between the filing of the petition and the date of the adjudication, the adjudication has been treated as vesting the title in the trustee from the time the petition was filed; still that doctrine furnishes no justification for importing, by construction, something into the statute that is not there now, and certainly none for obliterating therefrom something that is plainly written in its provisions.

But there was an abundant reason for the Legislature prescribing that the three months should be accounted back from the actual adjudication rather than from the filing of the petition. It was doubtless foreseen that it might so happen that involuntary proceedings would be resisted by an individual employing a large number of servants and workmen, and during the interval between the filing of the petition and the final adjudication, expecting to resist successfully an adjudication against himself, he would continue his business, though the interval might cover several months. Should such a case arise surely there is no reason why the employees who were in the debtor's service up to the moment of the adjudication should be excluded from the preference, and those who, perhaps months before, upon the filing of the petition against him, quit his service, should be accorded a priority by construing the adjudication to relate back for that purpose to the date of the filing of the petition. If the latter class is included, then the former, though falling literally within the terms of the statute, must be excluded, unless both are given a preference. If both those who hold claims for wages earned not more than three months prior to the filing of the petition, and those who hold claims for wages earned not more than three months prior to the actual adjudication, though possibly

many months after the filing of the petition, are included, then the statute will be expanded so as to give a preference, not for the accrued wages of three months, but for the unpaid wages of six months—a result obviously not contemplated by the Legislature.

The General Assembly has seen fit to declare that the preference for wages shall extend to claims for wages contracted not more than three months anterior to the adjudication of insolvency, and we have no right to say in the face of that explicit language that the Legislature intended something else. Our province is to construe the law as we find it, and not, under the guise of interpreting it, to enact new legislation, or to repeal that which has been duly adopted.

Entertaining the views we have expressed, we hold that the exceptions to the audit should have been sustained and that the special audit should have been ratified; and it is now so ordered.

> *Order reversed with costs above and*
> *below and special audit ratified,*
> *and cause remanded.*

(Decided February 24th, 1897).