WOOD et al. v. CAMDEN IRON WORKS.

(District Court, D. New Jersey. February 15, 1915.)

MASTER AND SERVANT ⊖⟶250¾ New, vol. 16 Key-No. Series—RECEIVERS—LIA-
BILITY FOR PAYMENTS DUE UNDER WORKMEN'S COMPENSATION ACT.

Under the New Jersey Employers' Liability Act (P. L. 1911, p. 134),
which provides that when an employer and an employé shall by agree-
ment, express or implied, accept the provisions of section 2 thereof, com-
pensation for personal injuries or for the death of an employé shall be
made according to the schedule contained therein, without regard to the
employer's negligence, and section 2, par. 8, providing that such agree-
ment shall bind the employé and his personal representatives as well as
the employer and those conducting his business during bankruptcy or in-
solvency, the receiver of an insolvent corporation authorized to continue
its business was bound to make weekly payments for which, under such
act, the corporation had become liable prior to his appointment, such pay-
ments constituting operating or administrative expenses, as under the
construction of the act by the state courts the obligations and rights
thereby created are contractual, and the payments required to be made
are part of the compensation of the employé for services rendered, and in
legal effect are indistinguishable from ordinary wages.

In Equity. Suit by Walter Wood and others against the Camden
Iron Works, in which a receiver was appointed for the defendant cor-
poration. On petition by the receiver for instructions. Receiver in-
structed.

Joseph H. Gaskill, of Camden, N. J., and Nelson B. Gaskill, of Tren-
ton, N. J., for receiver.

Walter H. Bacon, of Bridgeton, N. J., for certain holders of bonds
secured by mortgage.

HAIGHT, District Judge. On October 22, 1914, a receiver was
appointed for the defendant corporation, and was authorized to con-
tinue the business. Before the appointment of the receiver the defend-
ant corporation had become liable to make certain weekly payments to
some injured employés and to the representatives of some who had
been killed, in accordance with the provisions of the New Jersey Em-
ployers' Liability Act (P. L. 1911, p. 134). As respects one employé,
payments were required to be made pursuant to a judgment of the
common pleas court of Camden county, N. J.; but no suits had been
instituted for the others. The defendant corporation made the pay-
ments to which the persons were respectively entitled, until the re-
ceiver was appointed. The receiver has now petitioned the court for
instructions as to whether he should continue to make these payments.

It is urged, on behalf of the receiver, that as long as he continues
to run the business of the defendant he is obligated, under the provi-
sions of the above-mentioned statute, to continue to make the weekly
payments. I think his contention is correct. The act provides that,
when an employer and an employé shall, by agreement, either express
or implied (as therein provided), accept the provisions of section 2 of

⊖⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the act, compensation for personal injuries, or for the death of an employé, shall be made by the employer without regard to the negligence of the employer, according to the schedule contained in the act. The schedule provides for weekly payments, based on the amount of the employé's wages and the extent of the injury received. It has been held by the Supreme Court of New Jersey, in Interstate Telegraph & Telephone Co. v. Public Service Electric Co., 90 Atl. 1062, that the obligations and rights, thus created are contractual, and that the payments which the act requires to be made to the injured employé, or to his representatives in the event that he is killed, are part of the compensation of the employé for services rendered, and, in legal effect, are indistinguishable from ordinary wages. Mr. Justice Swayze, in writing the opinion of the Supreme Court, said (on page 1063):

"It [the compensation provided for in the act] is none the less compensation for labor done because the statute directs that its payment shall be distributed over a certain number of weeks in the future."

I think that the logical result of such construction is that the contract of employment, provided for in the statute, is to pay, in consideration of work to be done, so much during the time the employé is working, and, if he shall be injured, his wages shall be considered to have been increased in the proportions allowed by the statute for the time therein provided, the excess to be payable at certain designated periods in the future.

Paragraph 8 of section 2 of this act provides that:

"Such agreement * * * shall bind the employé himself, and for compensation for his death shall bind his personal representatives, his widow and next of kin, as well as the employer, and those conducting his business during bankruptcy or insolvency."

As before shown, one of the terms of the agreement is that, if the employé shall be injured, the employer, in consideration of the work which the employé has done, shall make the deferred payments at specified times. The act specifically provides that the agreement shall bind "those conducting the employer's business during bankruptcy or insolvency." It therefore follows that a receiver, who is conducting the business of the original employer during insolvency, as in this case, is, by the terms of the act, bound to make the payments which the employé (or his representatives) was entitled to receive from the original employer during the time that he conducts the business. It is thus a burden placed upon the continuance of the business. If, in any given case, it is deemed proper that the business of the employer should be continued during bankruptcy or insolvency, or any part thereof, the law provides that the agreement which was originally entered into between the employer and the injured employé, and every part thereof, must be fulfilled by the receiver to the same extent as the employer would have been compelled to fulfill it. It therefore follows that, as the requirement to make the weekly payments to the employé, or his representatives, is a burden cast by the law upon those who continue the business, the payments to be made by the receiver must be classed as operating or administrative expenses.

The receiver will therefore be instructed to continue to make the payments as long as he continues to conduct the business, such payments to be considered operating expenses, and paid in the same way as wages of other employés are paid.