THE BALTIMORE TRUST COMPANY, Trustee,

*vs.*

CHARLES O. ROWE et al.

---

CONSOLIDATED GAS ELECTRIC LIGHT & POWER COMPANY

*vs.*

CHARLES O. ROWE et al.

---

THE BALTIMORE TRUST COMPANY et al.,
Receivers,

*vs.*

CHARLES O. ROWE et al.

*Insolvency—Preferred Claims—Salary and Wages—Commissions to Salesmen.*

Sums due a salesman for commissions on sales are wages or salary, and as such to be allowed as a preferred claim, under Code, art. 47, sec. 15, in case of insolvency or a receivership.

p. 162

A "district representative" for a steel company, whose duties were to solicit orders, who had no authority to adjust claims, and who acted under the direction of the company, the prices being fixed by it, and sales being made only under authorization from the manager of the sales department, was a salesman, within the meaning of Code, art. 47, sec. 15, giving a preference to the claim of a salesman for wages or salary in case of insolvency or a receivership.

pp. 163, 164

Where, by the contract between a company and its salesman, commissions on sales were not payable until the goods were shipped and the money actually collected, there was no right, under Code, art. 47, sec. 15, to priority of payment of commissions on sales of goods which were not paid for by the

customers until after the appointment of receivers for the company, such commissions not being due and owing within the meaning of the statute, until payment for the goods.  p. 165

Under Code, art. 47, sec. 15, making "money due and owing" for wages or salaries "contracted not more than three months anterior to" an assignment, adjudication of insolvency, or appointment of receiver, a preferred claim against the property or estate of the insolvent, a salesman of a corporation in the hands of a receiver was entitled to assert such a preference for commissions on sales of goods which were paid for by the purchasers within three months before the appointment of a receiver, without regard to whether the goods were delivered before the commencement of such period, the time of payment for the goods being the time at which commissions were to be paid.                                                    p. 165

An employee of a corporation for which a receiver has been appointed is not entitled to assert, as an expense of the receivorship and as so entitled to priority, his claim for commissions on sales, made by him before the receivership, of goods subsequently delivered by the receivers and for which payment was made to the latter.                          p. 166

By the express terms of Code, art. 47, sec. 15, the lien of a mortgage, recorded over three months before the appointment of a receiver, is protected against the preferences allowed by that section in favor of claims for wages and salaries.      p. 167

*Decided April 19th, 1922.*

Appeals from the Circuit Court of Baltimore City (HEUISLER, J.).

Petitions by Charles O. Rowe and Timothy A. Canty against the Baltimore Trust Company and Clarence C. Pusey, receivers of the Hess Steel Corporation. From decrees in favor of said petitioners, said trust company as trustee under a mortgage deed of trust, the Consolidated Gas Electric Light and Power Company, as a general creditor of said steel corporation, and said receivers, file separate appeals. Reversed in part.

The causes were argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*S. Ralph Warnken* and *Edgar Allan Poe,* for the appellants.

*Peter Peck* and *William F. Podlich,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The Baltimore Trust Company and Clarence C. Pusey were, on the 14th of July, 1920, appointed receivers, by the Circuit Court of Baltimore City, of the Hess Steel Corporation. A petition was filed by Timothy A. Canty on the 17th of September, 1920, praying that the court pass an order declaring that he is entitled to preferred payment of the sum of $1,464.99 for work done by him, and commissions earned as a salesman of that corporation, within a period of three months prior to the appointment of receivers, or after said date, and authorizing and directing the receivers to make said payment out of the first money coming into their hands and available for such purpose.

Mr. Canty was employed on November 15, 1919, on a salary of $3,600 per annum plus a commission, which at first was to be two per cent. on tool steel sales and, when other salesmen were engaged, the commission was to be graded downward until a minimum of one per cent. was reached. He was to devote his time to securing tool steel business, and for the first year or so a considerable percentage of his time was to be spent in the field. His traveling expenses were to be paid by the company with the understanding that a nominal maximum would be allowed. His salary was paid monthly, $300 on the first of each month, his traveling expenses were paid weekly on submission of an expense account, and his commissions on sales were to be paid monthly—on the first of the month following the actual receipt of the money by the corporation, or, as he said, the commissions

became due to him "on payment of the invoices by the customers." He stopped work for the company on July 23, 1920, that being the date he heard that receivers had been appointed.

Schedule B, filed in the case, shows Mr. Canty's claims to be as follows:

   (1) Commissions on orders for goods delivered between April 14th and July 14th, 1920, and paid to the company between said dates .......................... $195.63

   (2) Commissions on orders for goods delivered between those dates, and paid for to the receivers after July 14th, 1920...   52.87

   (3) Commissions on orders for goods delivered by the receivers after July 14th, 1920, and paid for to them after said date. ..............................   910.78

The lower court passed a decree on the 20th of September, 1921, directing the receivers to pay what we have marked above (1) and (2), with interest from July 14th, 1920, as preferred claims under the provisions of article 47, section 15 of the Code, and also what we have marked (3), stating that "said payment to be charged by said receivers as a part of the expense incurred by them in and about their operation and management of said Hess Steel Corporation under the order" previously passed by the court in regard to the operation and management of the company as a going concern. The order of the court also directed the receivers to pay commissions on orders for goods which at the time of the hearing had not been accepted and filled by the receivers, but the court was informed that they would be—they to be allowed on such orders as the receivers accepted and filled, which were estimated in the order to be approximately $225.

Charles O. Rowe, on December 22, 1920, filed a petition similar to the one of Canty, and the lower court, on September 20, 1921, passed a decree directing the receivers to pay to him:

(a) Commissions due said Rowe on orders
for goods delivered by the Hess Com-
pany before April 14th, 1920, and paid
for between that date and July 14th,
1920. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $99.10

(b) Commissions due Rowe on orders for
goods delivered by the company between
April 14th, 1920, and July 14th, 1920,
and paid for between said dates. . . . . . . .    561.61

(c) Commissions due Rowe on orders for
goods delivered by the company between
those dates, and paid for after July 14th,
1920. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    718.24

    Those three were allowed as preferred
claims under article 47, section 15, and
interest was to be paid.

(d) Commissions due said Rowe on orders
for goods delivered by the receivers and
paid for to said receivers, said payments
to be charged as a part of the expenses
incurred by the receivers in and about
their operation and management of said
company under the order of court pre-
viously passed . . . . . . . . . . . . . . . . . . . . . .    919.12

(e) Commissions on certain orders to the
company which had not been accepted
and filled by the receivers at the time of
hearing, but the court is informed that
they contemplated filling said orders.
(They were to be charged as part of ex-
penses incurred by the receivers, and
allowed when paid to the receivers) . . . .    1,017.97

Rowe entered the employ of the Hess Company on October
1st, 1917, as a salesman to secure orders for steel. His ter-
ritory covered a part of the State of Pennsylvania, part of
New Jersey and later all of Maryland. He received a salary
of three thousand dollars a year, payable monthly, and his
commissions began April 1st, 1918. He received no commis-

sions until the company had been paid for the steel sold and shipped. The commissions were from one-half of one per cent. to five per cent., according to the kind of steel sold. We have thus stated the claims of the two, as most of the questions are applicable to both.

The first question we will determine is whether, under section 15 of article 47, commissions can be allowed as a preferred claim. That section provides that, in case of an assignment by any person or body corporate for the benefit of creditors, or an adjudication of insolvency, or the property or estate of such person or body corporate is taken possession of by a receiver under a decree of a court of equity,

"in the distribution of the property or estate of such person or body corporate, all the money due and owing from such person or body corporate for wages or salaries to clerks, servants, salesmen or employees contracted not more than there months anterior to the execution of such assignment, adjudication of insolvency, or appointment of receiver, shall first be .paid in full out of such property or estate, after payment of the proper and legitimate costs, expenses, taxes and commissions, and shall be preferred to all claims against the property and estate of such insolvent person or body corporate, except the lien claims of such persons as shall hold liens upon such property or estate, recorded at least three months prior to such assignment, adjudication or decree."

That section of the Code is referred to as it now stands, but by the Act of 1896, ch. 184, the word "salesmen" was added, being in other respects as it was in the Code of 1888. It will be observed that the statute was not changed as to the purpose for which the money was due and owing when the word "salesmen" was inserted, but it continued, and is still "all the money due and owing from such person or body corporate for wages or salaries." It is contended that, if it had been intended to give a claim for commissions priority, it

would have been so stated, but if it was only intended to give salesmen who are employed on salaries without commissions the benefit of the law, is it not as reasonable to suppose that the Legislature would have so said?

In the Bankruptcy Act of July 1st, 1898, sec. 64-b, this provision is made: "Wages due to workmen, clerks, traveling or city salesmen or servants, which have been earned within three months before the commencing of the proceeding," etc., shall be preferred—the words "traveling or city salesmen" having been inserted by amendment in 1906. In *Re New England Thread Co.,* 154 Fed. 742, the district judge said: "A right to priority being given to persons performing services of a certain character, the priority depends upon the character of the services, rather than upon the particular mode of payment. As it is a familiar fact that the compensation of traveling or city salesmen is often given in the form of a commission upon the amount of sales, the term 'wages,' upon a proper construction of the amended act, is broad enough to include commissions for services as salesmen." In *Re New England Thread Co.,* 158 Fed. 788, the Circuit Court of Appeals of the First Circuit held that the party before the court named Barden was a traveling salesman, and the wages included compensation for services rendered, for which he was a commission. In *Re Fink,* 163 Fed. 135, it was held, quoting from the syllabus for convenience, "Commissions paid a traveling salesman for his services are 'wages' within the meaning of the Bankruptcy Act, July 1, 1898, ch. 541, sec. 64-b (4), 30 Stat. 563, and a claim for such commissions earned within three months prior to the bankruptcy of the employer is entitled to priority thereunder." In 4 *Words and Phrases,* under the word "wages" the same rule is announced and the above cases are referred to.

In *Hamburger v. Corr,* 157 Pa. 133, 27 Atl. 681, a statute was being construed which provided "that the wages of any laborer or the salary of any person in public or private employment shall not be liable to attachment in the hands of

the employer," and it was said by JUSTICE McCOLLUM: "The miner who is paid by the ton, the mechanic who is paid by the piece, and the clerk or salesman who is paid by commissions on his sales are as much within its protection as if they were paid by the day, week, month or year. A whole-sale merchant employs two persons to travel over the country, and obtain from the retail dealers orders for his goods. To one of them he pays a certain sum per month, and to the other he pays commissions on the amount of orders taken. These commissions are as clearly compensation of the em-ployee for personal services in the interest and for the benefit of the employer as the monthly stipend is."

Our predecessors in *Moore* v. *Heanley,* 14 Md. 558, in con-struing a statute which provided "that no attachment of the wages or hire of a laborer or other employee, in the hands of the employers, whether private individuals or bodies cor-porate, shall affect any salary or wages of the debtor which are not actually due at the date of the attachment," held that Quinlan, the debtor, was an employee and that the five per cent. compensation mentioned in the contract was "wages or hire" within the meaning of the statute. We are of the opinion that the fact that part or all of the claims of these claimants are for commissions does not place them in a worse position than they would have been if they had only received salaries. It certainly would be difficult to make a logical distinction between two cases, in one of which the claimant was to get a salary and in the other he was to be paid for the same kind of services by commissions, and hold that one would have the benefit of the statute and the other would not. We have not overlooked what was said in *Casualty Ins. Co. Case,* 82 Md. 535, 567, and *Roberts* v. *Ebie,* 85 Md. 181, 186, about *Moore's Case,* and we realize that the statute then being construed was a different one from the one now before us, but the Court in those two cases said nothing which prevents us from giving the meaning we do to the term "wages," inas-much as we now have in section 15 of article 47 the word

"salesmen" as well as the other classes which were in it when those cases were determined. It is known by everybody that a large portion of salesmen are paid at least in part by commissions, and we would not be justified in holding that a salesman who only received a salary could have a priority under the statute, but one who received a salary plus commissions, or simply commissions for the same services, could not have the priority. When the Legislature amended the law by including salesmen and did not add anything to the terms "wages or salaries," it must have been because it was believed that those terms were sufficient to protect salesmen.

The further question for our consideration is whether the term "salesmen" can be properly applied to these two parties, within the meaning of the statute. There would seem to be no reason why it should not be for Mr. Canty, as he was, we think, unquestionably a salesman within the meaning of the statute. So far as Mr. Rowe is concerned, while perhaps not so clear, we think he was also such a salesman. Mr. Quinn, assistant treasurer of the company, who was called as a witness by the receivers, testified that Mr. Rowe's duties were "to solicit orders for steel of any kind that the company could manufacture"; that "the salesmen did not adjust claims"; that Mr. Rowe was a "district representative—that means the representative of the company located in a specific district to solicit orders for the corporation." Rowe was not entitled to any commissions until the company had filled the orders he sent it and had been paid for them. Although he might have been entitled to commissions on any sales made in his territory by another salesman, there is no evidence that there were any such, and if there had been, that would not have made any difference. As was said in *Re New England Thread Co.,* 154 Fed. 743: "Although in a letter to the trade the petitioner was designated 'special representative,' and although he hired an office and displayed a sign with the words 'special representative,' he had no general authority, and was a representative merely in the sale of

goods." Rowe being a district representative did not mean more, he acted under the direction of his employer, the orders were subject to approval by his employer, the corporation fixed the lowest prices at which the steel could be sold, no commissions would be paid on sales below the prices fixed, and they could only be made upon direct authorization of the manager of the sales department. It is a very different case from *Perkins* v. *Barr,* 126 Md. 91, as it was shown in that case that Barr's "services required the exercise of business judgment and executive ability of a higher grade than that usually required of clerks, employees or salesmen," which was not so with Rowe.

Having concluded that the commissions received by these parties were included in the term "wages" and that they were salesmen within the meaning of that term, it remains to determine which of their claims are covered by the statute. The first thing to be determined in that connection is the meaning of "all of the money due and owing" as used in the statute. In 19 *Corpus Juris,* 818, it is said that the meaning of the word "due" seems to be influenced largely by the connection in which it is used, and that no general rule can be safely stated from the decisions of the courts. In the notes on pages 818 to 822, inclusive, of that volume, numerous cases are cited, giving the interpretation of the courts, amongst others *Feeser* v. *Feeser,* 93 Md. 716, where we quoted 10 *Amer. & Eng. Enc. of Law,* 277, that "the word 'due' has a variety of meanings, depending on the connection in which it is used." The question in that case was whether the instrument before the court was binding on the estate of a testator. We quoted from *Corer* v. *Stem,* 67 Md. 449, where it was said that "there must be terms employed to create a *debitum in presenti* though the *solvendum* may be *in futuro* and even after the death of the obligor. It would seem to be clear that the relation of debtor and creditor must be created and subsist in the lifetime of the parties to the instrument, though the time of payment may be deferred until after

the death of one of the parties." As shown in those and other cases in this State, unless the instrument created a *debitum in presenti*, it was a mere testamentary paper and not binding as a debt on the estate of the decedent.

In this case it is shown, indeed testified to by the claimants, that the company owed them nothing until the goods were shipped and the money was actually collected. In other words, the relation of debtor and creditor did not exist until that time, and, if the company refused to ship the goods, the salesman had no claim whatever against the company, and in no event had a claim until the money was collected. It seems clear, therefore, that this statute only gave a preference to such claims as were actually binding as debts, contracted not more than three months anterior to the appointment of receivers. It must be remembered that we are considering the question of preference under the statute, and not that of whether an indebtedness arose after the receivers were appointed. There was no debt due for commissions on sales of goods not paid for by the customers to the company before the receivers were appointed, and in dealing with a statute of this kind, involving the question of preferences, receipts of the money by the receivers for goods sold by the company could not be made to relate back to the time they were sold, or even shipped. This is not a case where the company was indebted to a member of one of the classes named in the statute for wages or salary before the receivers were appointed, and payment of the indebtedness was simply postponed, covering a period during which receivers were appointed, and hence we need not determine whether under those circumstances a preference could be allowed.

It results from our conclusions that only the commissions in what we have marked (1), on orders for goods delivered between April 14th and July 14th, 1920, can be allowed under the statute to Mr. Canty as a preference, to wit $195.63, if that be the correct amount, which we are assuming it to be for the purpose of the opinion, and what we have

marked (a) and (b) in Mr. Rowe's claims, to wit: $99.10 on orders for goods delivered by the company before April 14th, 1920, and paid for between that date and July 14th, 1920, and $561.61 for goods delivered and paid for between those dates, assuming them, as we did above, to be correctly stated, for the purposes of this opinion. We allow (a) because the indebtedness of the company to Rowe did accrue between those dates and did not accrue before, or after.

There is in our judgment no foundation for the claims of either of them, as *preferences,* for the commissions on amounts received by the receivers in and as a part of their management and operation of the business of the company, which was authorized by the court to be continued by the receivers as a going concern. That, we think, would be contrary to the spirit, not to say the letter of our statute and our practice in dealing with insolvent persons and corporations. Nothing was done, in connection with those claims, by either of those claimants for the receivers. Their work was done for the company before the receivers were appointed, and the receivers simply received payments for the goods sent out by the company, or shipped the goods not sent by the company, and received the payments. It is not altogether clear in the record about the claims of Rowe for the items marked above as (d) and (e). Whether those deliveries and payments were for orders sent to the receivers by Rowe, after July 15th, 1920, when he was in the employ of the receivers, is what is not altogether clear. Quite a number of the orders are dated, in what is called Schedule (B), after the receivers were appointed, but, according to the testimony, he was not entitled to commissions on orders after he was employed by the receivers. Mr. Quinn testified that he was employed by the receivers at $800 a month and then explained his employment as follows:

"Mr. Rowe was on a salary and commission basis, and based on the total of both that he had gotten for a previous period, which I think was a year—he averaged considerably

higher than that. When the receivers decided to employ him, he wanted the same arrangements, and the receivers did not want to make any commission arrangement with any employee, so they compromised on that amount of money, which was somewhat less than he averaged previously."

Mr. Rowe said the same thing in substance, and a letter from the receivers dated August 3rd, 1920, to him was read by him when on the stand, which began: "Confirming our several conversations and as a record of our agreement," and after referring to the nature of the duties, the letter continued: "Your employment is by the month, beginning July 15, 1920, with salary at the rate of $800 per month and your traveling expenses. All subject to any further order of the Circuit Court for Baltimore City that may be issued in this receivership." He was not in the employ of the receivers after October 15th, 1920, and as we understand the record, it is conceded that his salary was paid, before the receivers were appointed, at $250 per month, and there is nothing in the petition or elsewhere alleging that he was not paid the salary by the receivers for the time he was employed by them. So we assume that the claim he is making for commissions were on orders given when the former arrangements with the company were still in force and not under his agreement with the receivers. How commissions on orders obtained after the receivership and filled by the receivers and the money paid to them could be allowed as a part of the management and operation of the business of the receivers does not appear, if he was paid a salary, which was estimated on the basis of his former salary plus the commission. Any compensation for work he did for the receivers was included in his salary.

What we have said above in reference to the amounts the respective parties are entitled to as preferences is subject to the further question whether the receivers have or will have in hand sufficient funds to pay them from properties or collections outside of what are contained in the mortgage to the

### Opinion of the Court.

Baltimore Trust Company, Trustee, which was recorded over three months prior to the decree appointing the receivers. Art. 47, sec. 15 expressly protects such a lien from the preferences allowed under that section.

We have no doubt about the right of either of the three appellants to take the appeals under the circumstances of this case, and do not understand that to be seriously questioned, although referred to in appellants' brief.

It follows that the two decrees dated the 20th day of September, 1921, one dealing with the claims of Timothy A. Canty and the other with those of Charles O. Rowe, must be reversed in part and affirmed in part, but of course they can assert their claims not allowed as preferences as general creditors.

> *The two decrees of September 20th, 1921, reversed in part and affirmed in part, and case remanded for action of the lower court in accordance with this opinion—the appellees, Canty and Rowe, and the receivers each to pay one-third of the costs in this Court, the costs below to be paid by the receivers, as provided in the decrees of the Circuit Court of Baltimore City.*