**T. H. MASTIN & CO. et al. v. PICKERING LUMBER CO. et al.**

No. 2885K.

District Court, N. D. California, S. D.

Jan. 28, 1933.

J. J. Lermen, of San Francisco, Cal., for receiver of defendant Pickering Lumber Co.

Alfred C. Skaife, of San Francisco, Cal., for claimants under compensation awards.

Jesse Steinhart and John J. Goldberg, both of San Francisco, Cal., for Hartford Accident & Indemnity Co.

KERRIGAN, District Judge.

This case presents a novel problem in receivership administration in California, namely, what priority have claimants under workmen's compensation awards for injuries suffered before the receivership, in the assets of the receivership of a company which acted as a self-insurer under the California Workmen's Compensation Act (Deering's Gen. Laws 1931, Act 4749)? The problem is not

only new, but it presents considerable difficulty. Counsel have rendered the fullest assistance to the court by their able and full discussion of the subject in their briefs.

The matter comes before the court by the petition of claimants filed in the ancillary receivership of defendant corporation in which they pray for a decree declaring that their claims are prior and preferred and directing the ancillary receiver as to the priority of payments. Claimants have awards against the defendant corporation for injuries sustained by them as employees thereof or as compensation to dependents of employees who were killed in the service of defendant corporation. The company is a foreign corporation carrying on a lumbering business in California and other states. Under the provisions of section 29 (a) of the Workmen's Compensation, Insurance and Safety Act of 1917 of California, 2 Deering's General Law of California 1931, p. 2298, Act 4749, it elected to act as a self-insurer of its workmen and executed a bond with the Hartford Accident & Indemnity Company as surety to the state of California in the sum of $20,000 that it would fulfill its obligations as a self-insurer. The surety resisted making payments under the bond. Since the filing of the petition in this matter the Supreme Court of California, in the case of Hartford Acc. & Ind. Co. v. Industrial Accident Commission (Cal. Sup.) 13 P. (2d) 699, affirmed the order of the California Industrial Accident Commission that the surety pay the principal sum of the bond into the state compensation fund and that it be allocated to the claimants having final awards, withholding a sufficient sum as the proportionate share of the claimants whose awards had not become final. The order has been complied with and money has been accordingly paid to all of the claimants except one, the only one whose award has not yet become final.

The Hartford Company filed a claim herein before the payments on the bond were ordered by the Supreme Court, raising certain points and asking to be subrogated to the rights and preferences of the compensation claimants in the event that it should be compelled to make payments under the bond, and further asking leave to amend the claim to set forth new matters as they arise. In order to dispose of all related matters at once, I shall, without waiting for the matter to come formally before me on an amended claim, state my views upon the rights of the indemnity company. It is the rule in California that a surety who pays the debt of his principal is subrogated to all of the rights and *priorities* of the creditor. 23 Cal. Juris. 991; Pond v. Dougherty, 6 Cal. App. 686, 92 P. 1035; Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286. The Hartford Company is therefore entitled to the same priorities as the claimants whose awards it paid.

Additional sums are due the claimants, which according to the terms of the awards should be met by weekly payments. It is indeed unfortunate that those who have suffered physically from the hazards of industry should suffer further because of the business reverses of their employer. In receivership and bankruptcy proceedings, compensation claimants are not ordinarily affected because most concerns take out industrial accident insurance and the insurance company has the responsibility of complying with the terms of the award. The Pickering Lumber Company, however, elected to act as a self-insurer, an entirely proper course under the California law, and executed the bond which was deemed by the Industrial Accident Commission to be a sufficient protection to the workmen in the event of the failure or default of the company. The bond has proved inadequate and there are further extensive claims against the receivership.

It is conceded that Federal courts acting in equity receiverships are not absolutely bound to recognize preferences and priorities created by state laws, but it is the practice in this and other jurisdictions to allow such preferences and priorities as seem equitable. Stanley Works v. Gourland Typewriter Mfg. Co. (D. C.) 278 F. 995; Marshall v. People of New York, 254 U. S. 380, 41 S. Ct. 143, 65 L. Ed. 315. The statutory priority granted in this type of case in California is equitable and will be the basis of my decision. The essential problem then consists in the application of the priority in receivership proceedings. Section 24 (e) of the Compensation Act (2 Deering's General Laws of California 1931, p. 2294, Act 4749) provides: "A claim for compensation for the injury or death of any employee, or any award or judgment entered thereon, shall have the same preference over the other debts of the employer, or his estate, as is given by law to claims for wages. Such preference shall be for the entire amount of the compensation to be paid, but this section shall not impair the lien of any previous award." Section 1204 of the California Code of Civil Procedure provides for the priority of wages in receivership proceedings and is therefore determinative

of the priority of the compensation claims to their full amount. Its pertinent portions read as follows:

"When any assignment, whether voluntary or involuntary, and whether formal or informal, is made for the benefit of creditors of the assignor, or results from any proceeding in insolvency or receivership commenced against him, * * * the wages and salaries of miners, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered such assignor, * * * within ninety days prior to * * * the commencement of the proceeding when a court action is involved, and not exceeding two hundred dollars each, constitute preferred claims, and must be paid by the trustee, assignee or receiver before the claim of any other creditor of the assignor, insolvent, or debtor whose property is so turned over, and must be paid as soon as the money with which to pay same becomes available. * * *

"This section is binding upon all the courts of this state and in all receivership actions, except those based on a prior recorded lien, the court must order the receiver to pay promptly out of the first receipts and earnings of the receivership, after paying the current operating expenses, such preferred labor claims."

It has been earnestly contended by counsel for claimants that these compensation claims are within the definition of the term "current operating expenses." The case relied on in the Eastern District of Michigan, which was an order made without discussion of the law in Harris Trust & Savings v. Saginaw Transit Co. and presented as an exhibit in this case, is not helpful. Compensation claims are ordered paid as "prior claims and charges of operation," no distinction being drawn between the two types of claim. In Wood v. Camden Iron Works (District of New Jersey) 221 F. 1010, compensation claims were ordered paid by the receiver as operating expenses, but the New Jersey statute, however, was essentially different from the California statute and did not have a provision establishing priorities. In the face of the express statutory provision that this type of claim in California shall have the same preference as wage claims prior to the receivership, it would be untenable to hold that it nevertheless is part of "current operating expenses." Compensation claimants have a preference equal to that of wage claimants, but they have no greater right.

The exception in section 1204 of the Code of Civil Procedure of receiverships "based on a prior recorded lien" has occasioned some difficulty in this case. It has been urged that this case does not come within the exception because the ancillary receivership is based on a suit by a simple contract creditor. The principal receivership of the Pickering Lumber Company is based on a prior recorded lien, and furthermore the complaint in the ancillary receivership in this district alleges that there is incumbered real property in this district. I am of the opinion that the character of the principal receivership determines the character of all proceedings ancillary to it, especially where, as here, there is incumbered real property within the district.

It has been further contended by counsel for claimants that this exception is limited to receiverships for the purpose of foreclosing a lien and does not apply to operating receiverships. The meaning of this exception has not been adjudicated by the appellate courts of California. After a careful analysis of the section in the light of the history of priorities and preferences and of the general rules applicable, I do not believe that such a limited scope should be given to the exception.

The sentences of section 1204 are apparently contradictory. The first sentence makes wage claims preferred claims "before the claim of any other creditor," which would seem to make them prior to secured liens. The last sentence of the section applies to operating receiverships, provides that these preferred claims shall be paid first after the current operating expenses out of the first receipts and earnings, but excludes from its effect receiverships based on a prior recorded lien. As to the first sentence, the Legislature had the power to make these claims prior or to mortgage claims by expressly stating so in the statute but not otherwise. 14a Corpus Juris, 1025; Fitzgerald v. Meyer, 65 Mo. App. 665; Schmidtman v. Atlantic Phosphate & Oil Corporation (C. C. A. 2) 230 F. 769. The statute of New York state (Laws 1897, c. 415, § 8), construed in the Schmidtman Case, supra, provided that "upon the appointment of a receiver of a partnership or of a corporation * * * the wages of the employees of such partnership or corporation shall be preferred to every other debt or claim." After a careful consideration of the authorities interpreting statutes giving priorities, the court held that such

a statute cannot impair contract liens unless its language clearly indicates an intention to do so, that the statute in question did not contain such express language, and that the effect of the statute was to give priority in the unincumbered assets but not in the incumbered assets. Similarly there is nothing in the California statute expressly giving preference over mortgage liens. Our statute creates a preference in behalf of wage claims, but the preference is over general creditors and not over secured creditors. The first sentence of section 1204 is therefore entirely consistent with the exclusion of receiverships based on recorded liens in the last sentence. Light is thrown upon the meaning of the last sentence of section 1204 by the interpretation of a similar statute in Oregon (B. & C. Comp. § 1083), which, however, lacked the exception in behalf of prior recorded liens. It provided for the payment of wage claimants out of "the first receipts and earnings of said * * * corporation, after paying current operating expenses." The Supreme Court of Oregon, in the case of Security Trust Co. v. Goble R. Co., 44 Or. 370, 74 P. 919, 75 P. 697, held that such a provision applied only to the surplus earnings of the receivership and gave no priority in the corpus of the estate. See, also, 14a Corpus Juris, 1025, and 1 Clark on Receivers (2d Edition) p. 967. With the exception of receiverships based on a prior recorded lien expressly incorporated in the statute, these claimants have no priority even in the surplus earnings, if any there be. This makes it unnecessary to consider the mass of accounting detail presented to determine whether or not there are surplus earnings of the receivership. The effect of section 1204 in receivership proceedings "based on a prior recorded lien" is to give wage and compensation claimants priority over general creditors and over all creditors in the unincumbered assets of the corporation.

The situation of the claimants is very serious and it would be regrettable indeed to compel them to wait until final liquidation for payment. Since there is some real property in the Northern District of California, unincumbered except by receiver's certificates ordered issued for the payment of taxes thereon, belonging to the Pickering Lumber Company, a practical solution is, I hope, possible. These compensation claims are prior, as I have said, to those of the general creditors and to the lienholders' rights in the unincumbered property as to any deficiencies should the security fail to realize the amount of their indebtedness. Receivers' certificates may be issued as a first lien upon the unincumbered property, subject only to the lien of the taxes or receivers' certificates issued to pay taxes, for the purpose of raising money to pay these claims. 1 Clark on Receivers (2d Edition) p. 636; 53 Corpus Juris, p. 186 et seq. It will be to the advantage of the estate to settle these claims in full and commute the awards under the provisions of section 28 of the Workmen's Compensation Act, 2 Deering's General Laws of California 1931, p. 2296, Act 4749. The receiver should accordingly take such steps as are necessary to commute the awards and borrow the money to pay them upon receiver's certificates which shall be a first lien upon the unincumbered property in this district, subject, as above stated, to the lien of taxes thereon, or of receiver's certificates issued to pay the same.

Let an order be prepared in accordance with these views.