## PYRITES CO., Inc., v. DAVISON CHEMICAL CO.
### No. 2160.

District Court, D. Maryland.
Aug. 1, 1933.

Rowland K. Adams and O. Bowie Duckett, Jr. (of Adams & Hargest), both of Baltimore, Md., for claimants.

G. Ridgely Sappington and Wilson K. Barnes, both of Baltimore, Md., for receivers of Davison Chemical Co.

CHESNUT, District Judge.

The Davison Chemical Company, a Maryland corporation, is in general equity receivership in this court. The receivers were appointed February 13, 1933. Prior to the receivership David E. Wilson and Frank Gaylor respectively, were employed by the Company. In the course of their employment both were injured prior to the receivership. The injury to Wilson occurred on October 5, 1928; that to Gaylor on December 19, 1931.

Acting under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950), the Deputy Commissioner made an award of compensation to Wilson by order dated May 8, 1933, to be paid at the rate of $6.34 per week beginning January 27, 1933, and to continue until there is a change in condition, payment to be made weekly. Prior to the making of said award the Davison Chemical Company had voluntarily made weekly payments of compensation to Wilson up to and including January 26, 1933, a total of $1,322.03. In the case of Gaylor, by order passed June 24, 1932, by the Deputy Commissioner, compensation was awarded at the rate of $8.54 per week for the period of 55.5 weeks beginning May 1, 1932, and terminating on or about May 23, 1933; and the Company made payments on account of the award up to and including February 4, 1933. At the time of the appointment of receivers the balance remaining unpaid was $132.37, being for 15.5 weeks at $8.54 per week.

Gaylor's petition asks for the payment of this latter amount as a preferred claim. Wilson's petition points out that under the award to him the maximum possible additional liability of the Company over and above what has previously been paid is $6,177.97, and that a commutation of this amount if made in accordance with the requirements of the Longshoremen's and Harbor Workers' Compensation Act would be the present capital payment of $4,041.80, for which amount he now asks a present preferential payment.

The validity of the awards is not questioned. The Davison Chemical Company did not carry compensation insurance before the receivership but filed an indemnity bond which may prove to be insufficient in amount.

The act of Congress known as the Longshoremen's and Harbor Workers' Compensation Act became effective March 4, 1927 (title 33, United States Code, §§ 901–950 [33 USCA §§ 901–950]). Its constitutionality (with certain constructive implications) has recently been upheld by the Supreme Court in Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598, and the underlying philosophy and nature of the legislation, and its application, have been recently considered by the Circuit Court of Appeals for this Fourth Circuit in Wheeling Corrugating Co. v. McManigal, 41 F.(2d) 593, 595, and United States Casualty Co. v. Taylor (C. C. A.) 64 F.(2d) 521.

The claim for preference in this case is based on section 17 of the act (33 USCA § 917) which reads as follows: *"Compensation a Lien Against Assets.* Compensation shall have the same preference of lien against the assets of the carrier or employer without limit of amount as is now or may hereafter be allowed by law to the claimant for unpaid wages or otherwise."

So far as counsel or the court have been able to discover, there is no prior reported judicial decision construing or applying this section of the law as contained in this act of Congress. But, as stated by Judge Parker, in the Wheeling Corrugating Co. Case, supra, the statute is modeled upon the New York Workmen's Compensation Law (Consol. Laws, c. 67); and section 917 is apparently a reproduction of section 34 of the New York law (as it read before recent amendment). See Lane v. Industrial Commissioner of State of New York, 54 F.(2d) 338, 340 (C. C. A. 2). The question presented here is whether or not by the proper construction of the section, it applies to the compensation awards made to these claimants respectively or any part thereof. While the section is brief and seemingly verbally clear, it nevertheless presents, as a case of first impression, several points for consideration. The preference that is given is (a) the "same" (b) as is "allowed by law" (c) but "without limit of amount" (d) for "unpaid wages or otherwise." The expression "or otherwise" has no apparent application to this case. It is agreed by counsel that the phrase "by law" has reference to the law of the State where the question arises with respect to preference for "unpaid wages." No other meaning of the phrase is

presently apparent unless perhaps if the case should arise in bankruptcy (as it does not here, this case being in equity), the bankrupt law may be comprehended by it. The only Maryland statute which is applicable is section 15 of article 47 of the Maryland Code of 1924 (Bagby's Annotated Code of Maryland), the pertinent provisions of which are:

"Whenever any person or body corporate * * * shall have * · * * its property or estate taken possession of by a receiver under a decree of a court of equity, in the distribution of the property or estate of such person or body corporate, all the money due and owing from such person or body corporate for wages * * * contracted not more than three months anterior to the * * * appointment of receiver, shall first be paid in full out of such property or estate, after payment of the proper and legitimate costs, expenses, taxes and commissions, and shall be preferred to all claims against the property and estate of such insolvent person or body corporate, except the lien claims of such persons as shall hold liens upon such property or estate, recorded at least three months prior to such assignment, adjudication or decree."

So far as I am aware, there are no creditors holding recorded liens in substantial amount. The corporation was, prior to the receivership, engaged on a very large scale in the manufacture and sale of fertilizers and the business is now being continued by the receivers who have at the present time very substantial cash funds on hand. We are concerned here, therefore, only with the preference, if any, of these compensation awards as against the claims of common creditors.

It will be noted that the Maryland Act limits the preference for wage claims to those due and owing and contracted "not more than three months anterior to the * * * appointment of receiver." But section 917 of the Longshoremen's and Harbor Workers' Compensation Act expressly declares that the preference given by law to unpaid wages shall be "without limit of amount." The principal and important question of construction thus presented is whether or not the limitation as to time of origin of the wage claims, as provided for in the Maryland statute, is literally operative in this case to restrict the extent of the preference in view of the wording of section 917 of the Longshoremen's and Harbor Workers' Compensation Act, which gives the preference "without limit of amount." There is said to be no legislative history of the Act of Congress to aid in the construction.

 The question is not free from all doubt. No doubt the Maryland statute must be considered in the light of its construction and application by the Maryland Court of Appeals; and it is entirely clear from a number of decisions therein that wage claims are not entitled to preference unless the wages were due and owing within the three month period prior to the receivership. For illustration see Roberts v. Edie, 85 Md. 181, 186, 36 A. 820; Baltimore Trust Co. v. Rowe, 141 Md. 155, 118 A. 405. See, also, In re Reliable Furniture Co. (D. C. Md.) 32 F.(2d) 805; sub nom. Manly v. Hood, 37 F.(2d) 212 (C. C. A. 4). It is also clear enough from section 917 that the local law determines the *rank* if not the *measure* of the lien. A merely literal application of the Maryland statute would give the petitioners only a small portion of the total compensation awards still due them, that is the weekly instalments thereof that matured within three months prior to the receivership on February 13, 1933. If this is the full extent of their preference it may be said that to them it would seem the effect of section 917 is to "keep the promise to the ear but break it to the hope."

There is, however, I think, another permissible view to be taken. It is a fair construction of section 917 that Congress intended in the expression "the same preference" to mean the *rank or priority of preference* given by the state law. And if so, then clearly by section 917 the extent of the preference here is without limit of amount. And I think it may fairly be said that the chief purpose of the Maryland act in prescribing the three month period was to limit the amount or extent of preference given to unpaid wages. I am not aware of any other local legislative policy in this respect.

 A merely literal application of the Maryland statute would fall far short of the evident purpose of Congress in this modern social legislation. "Compensation" is given to the employé as a statutory measured indemnity for a capital physical loss caused by some act or omission occurring wholly at a particular time, resulting in a disability which may be either permanent or temporary. By the policy of the law in the best interests of the employé, compensation is ordinarily payable in instalments in the future, and it is only in the unusual case to be commuted and paid in a capital lump sum. See section 14 of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 914). It is an obligation imposed by law based upon the idea of the status or relationship of employer and employé. Cudahy Packing Co. v. Parra-

more, 263 U. S. 418, 423, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. It is a statutory substitute for the common law right of action by the employé which might culminate in a judgment for a capital sum as damages. The obligation of the employer to indemnify for the loss is in its nature a single entity just as was the common law chose in action of the employé. That it is to be liquidated in periodic partial payments does not transmute its legal nature from an entire obligation into several separate obligations each arising from the several periodic payments required to be made, until the whole is paid. Though analogized to "wages" for its preferential status as against the common creditors, it is unlike wages in that the employer is not free to terminate the continuing obligation by discharging the employé. The whole unpaid balance of "compensation" is thus "due and owing" (in the terms of the Maryland statute) although payable under the award periodically in the future, and the amounts unpaid in this case were therefore so due and owing during the three months period prior to the receivership. There was no element of contingency inherent in the obligation as was present in the case of Baltimore Trust Co. v. Rowe, 141 Md. 155, 118 A. 405, relied on by counsel for the Receivers. By section 2 (12) of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 902 (12), " 'compensation' means the money allowance payable to an employee or to his dependents as provided for in this chapter."

And as said in the Wheeling Case, supra:

"Its purpose is to extend to the workers upon navigable waters of the United States, who cannot be reached by state legislation, the benefits of a compulsory system of compensation for disability or death resulting from injuries received in the course of their employment. This system of compensation is based, not upon ancient fictions of the law, but upon the principles of industrial insurance in application of the theory that industrial accidents, whether due to the negligence of the worker or not, are a hazard of the business; and that they should be borne, not by the individual worker, but by the industry in which he is engaged."

Therefore, when the Longshoremen's Act gives that preferential status to "compensation" which is given by the state law to "wages" *without limit of amount*, it is unreasonable to conclude that Congress meant, by reference to the state law, to limit the preference to only those longshoremen and harbor workers whose injuries occurred within a relatively short time prior to insolvency, or to limit the instalments payable weekly over a long period, where the injury was a severe one, to those accruing during a few months prior to the receivership or insolvency. It should be borne in mind that the act of Congress is national in its scope though operating locally only through state legislation. It is true the application of the statute might have been made clearer if Congress had gone into more detail in section 917, in view of the different state statutes. But nevertheless, I think the dominant purpose of the Act is fairly clear in view of the subject matter. The resultant construction may seem somewhat like fitting a square peg into a round hole, but nevertheless I think the driving force of the Act is sufficient to accomplish it.

While there seems to be no precedent for this particular case, a closely analogous situation was presented in Mastin & Co. v. Pickering Lumber Co. (D. C. Cal.) 2 F. Supp. 605, where compensation awards under the California law were ordered to be preferentially paid by receivers in federal equity. The California statute (Gen. Laws 1931, Act 4749, § 24 (e) provided that compensation awards "shall have the same preference over the other debts of the employer, or his estate, as is given by law to claims for wages. Such preferences shall be for the entire amount of the compensation to be paid, but this section shall not impair the lien of any previous award." The pertinent portion of the state law providing priority for payment of wages, included the following:

"The wages and salaries of miners, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered such assignor * * * within ninety days prior to * * * the commencement of the proceeding when a court action is involved, and not exceeding two hundred dollars each, constitute preferred claims, * * * and must be paid as soon as the money with which to pay same becomes available." Code Civ. Proc. Cal. § 1204.

It will be noted that the section of the California Compensation Act providing for preference is in effect the same as that contained in the Longshoremen's and Harbor Workers' Compensation Act, and the preference for wages given by the California law is similar to the Maryland law in limiting the origin of the wages to be preferred to the period of ninety days prior to the court proceeding, and the statute also limits the amount to $200. The opinion does not expressly state

298

the amount or time of origin of the compensation claims involved, and the effect, if any, of the ninety day period is not discussed, but from a reading of the case as a whole (and after reference to copies of the pleadings obtained from counsel) it seems inferable that the period of ninety days mentioned in the statute was not regarded as an effective factor to limit the amount of the preference. If this inference is correct, it would seem the case is by analogy a precedent for the construction above adopted in this present case.

In Lane v. Industrial Commissioner of State of New York, 54 F.(2d) 338, the Circuit Court of Appeals for the Second Circuit declined to give a preferential status in bankruptcy to compensation awards under the New York Workmen's Compensation Law. Section 34 of the New York law (as it then read—I am informed it has since been amended) provided for such preference in language almost identical with that of section 917 of the Longshoremen's and Harbor Workers' Compensation Act. But the case is, I think, clearly distinguishable here for two reasons; first, this proceeding is not in bankruptcy, and secondly, the New York statute giving preference to wage claims was not broad enough in its provisions to apply at all to what there occurred. The court held that a state Legislature may not give priority in bankruptcy proceedings to workmen's compensation or wage claims; and compensation awards growing out of legislation based upon the concept of a status rather than contract were not either "wages" or "debts" within the meaning of section 64b (5) and (7) of the Bankruptcy Act, 11 USCA § 104 (b) (5, 7).

Other cases dealing with generally similar subject matter, but not directly in point here by reason of materially different wording of the statutes, are In re Inglis Manufacturing Co., 292 F. 907 (D. C. Wis.); Wood v. Camden Iron Works, 221 F. 1010 (D. C. N. J.); Steel & Iron Mongers, Inc., v. Bonnite Insulator Co., 90 N. J. Eq. 200, 106 A. 380. See, also, Schneider's Workmen's Compensation Law, § 570; Brzinski v. Acme Body Co. (D. C. N. J.) 37 N. J. L. J. 183; Kennison v. Kanzler (C. C. A. 6) 4 F.(2d) 315; West Virginia Rail Co. v. Jewett (D. C. Ky.) 26 F.(2d) 503.

In my opinion it logically follows that the claimants in this case, Wilson and Gaylor, are now entitled to be paid in full the weekly instalments of compensation respectively awarded to them which have accrued up to the present time; and the receivers should be ordered to make such payments out of the funds now in their hands and to continue to make similar weekly payments in the future to Wilson in accordance with the award of the Deputy Commissioner in his case, and until some further order is made by the Deputy Commissioner, or until the further order of this court in the premises. I do not think there is any occasion at the present time for the court to provide for a capital payment by commutation of the balance of Wilson's claim, especially as no such order or commutation has heretofore been made by the Deputy Commissioner. If there should be a distribution of the assets of the Davison Chemical Company before the completion of the payments to Wilson under the award, the question as to commutation of the weekly payments due to him into a capital sum can then be taken up for consideration.

I will sign orders in accordance with the aforegoing opinion.